## In re Kevin ALEXANDER and Angela M. Alexander, Debtors.

### Edward W. BERGQUIST, Trustee, Plaintiff,

v.

### FIDELITY MORTGAGE DECISIONS CORPORATION, Defendant.

Bankruptcy No. 96–43070.

Adversary No. 97–4180.

United States Bankruptcy Court, D. Minnesota.

March 9, 1998.

---

Edward W. Bergquist, Minneapolis, MN, for Plaintiff.

Matthew Burton, Leonard, O'Brien, Wilford, Spencer & Gale, St. Paul, MN, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for trial on January 27, 1998. Appearances were noted on the record. The parties filed a Stipulation as to Undisputed Facts, which was supplemented on the record. I then read my decision into the record and stated that I would issue a subsequent written order.[1]

### FINDINGS OF FACT[2]

On February 29, 1996, Kevin and Angela Alexander (Debtors) purchased a home at 2611 Girard Avenue North, Minneapolis, Minnesota (the property). Debtors borrowed $44,500 from Defendant, Fidelity Mortgage Decisions Corporation (Fidelity), to finance the purchase from a third-party seller. On February 29, 1996, at the closing, Debtors delivered to Fidelity a note and mortgage on the property in the principal amount of $44,500 and Fidelity advanced $44,500 to Debtors to pay the sellers. Fidelity did not record the mortgage with the Hennepin County Recorder until fourteen days later on March 14, 1996.

Debtors filed a voluntary petition for relief under Chapter 13 on May 15, 1996, a date less than ninety days following the recordation of the mortgage. On April 15, 1997, their bankruptcy case was converted to one under Chapter 7. On April 15, 1997, Debtors owed Fidelity $47,332. Plaintiff, Edward Bergquist (Trustee), is the trustee in the Chapter 7 case.

Debtors have claimed the property as exempt. No objection to the claimed exemption has been made. Debtors are delinquent in making their mortgage payments and Fidelity has commenced proceedings to foreclose on the mortgage.

### CONCLUSIONS OF LAW

A. POSITIONS OF THE PARTIES

The Trustee has commenced this adversary proceeding seeking to avoid the transfer of the mortgage to Fidelity as a preference under § 547 of the Bankruptcy Code and seeks a money judgment against Fidelity, under § 550 of the Code, in the sum of $47,332.00.[3]

The parties have stipulated that all elements of a preferential transfer exist. They agree that the recording of the mortgage was a transfer to or for the benefit of Fidelity, for or on account of an antecedent debt, made while the Debtors were insolvent, and made within ninety days of the date the Debtors filed their petition in bankruptcy. They further agree that, if the mortgage is avoided, Fidelity is not a fully secured creditor and will receive more by reason of the transfer than it would have received in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 547(b) (1994).

Fidelity asserts two defenses to the Trustee's preference claim. First, under 11 U.S.C. § 547(c)(3), it asserts that this was an enabling loan perfected within twenty days of the date Debtors possessed the property.

---

1. At the hearing I indicated that I would likely not write a comprehensive discussion on the issues. Nevertheless, I have determined to do so. To the extent my comments on the record were in any way unclear or even contrary to this written opinion they may be ignored.

2. Taken from the Stipulation of Facts, as orally supplemented on the record.

3. In return for the Trustee's withdrawal of his objection to Fidelity's motion for relief from stay to foreclose the mortgage, Fidelity agreed to entry of a money judgment, in lieu of return of the mortgage (property), should the Trustee prevail on the merits in this preference action.

Second, Fidelity asserts that the delivery of the purchase money funds and the recordation of the mortgage constitute a contemporaneous exchange for new value, protected by 11 U.S.C. § 547(c)(1). The Trustee responds that § 547(c)(3) does not apply to purchase money security interests in real estate. He further asserts that there was no contemporaneous exchange because the mortgage was recorded more than ten days following its delivery on February 29, 1996.

## B. PREFERENTIAL TRANSFER

Section 547 of the Bankruptcy Code allows a trustee to avoid a prepetition transfer of an interest of a debtor in property if the transfer is made 1) to or for the benefit of a creditor; 2) for or on account of antecedent debt; 3) while the debtor was insolvent; 4) to a noninsider on or within ninety days of the filing of the bankruptcy case; and, if such transfer 5) results in the creditor receiving more than the creditor would have received in hypothetical liquidation in a Chapter 7 case. *See id.* § 547(b). As indicated, the parties agree that these criteria have been met in this case with respect to the transfer which occurred upon recordation of the mortgage.

Section 101 of the Bankruptcy Code defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." *Id.* § 101(54). Sections 547(e)(2)(A) and (B) of the Bankruptcy Code further provide that a transfer is *made* 1) at the time the transfer takes effect between the parties if the transfer is perfected at or within ten days after

such time; and 2) if perfection does not occur within ten days, then at the time of perfection.[4] *Id.* § 547(e)(2). A transfer of real estate is *perfected* when a bona fide purchaser "under a contract for the sale of real property ... against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." *Id.* § 547(e)(1). In Minnesota, recordation of a mortgage of real estate cuts off the rights of subsequent bona fide purchasers to obtain a superior position. Minn.Stat. § 507.34 (1996). *See Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 524 (Minn.1990); *Miller v. Hennen,* 438 N.W.2d 366, 369 (Minn.1989).

 Delivery of the mortgage constituted a transfer of an interest of Debtors in property. Because Fidelity immediately exchanged value, however, this transfer was not for or on account of an antecedent debt and is not preferential. Recording the mortgage also constituted a transfer of an interest of the debtor in property and, unless otherwise protected, was for antecedent debt. Under § 547(e)(2)(A), had the mortgage been recorded within ten days of its delivery,[5] the date upon which it was effective between the parties, the transfer would have been deemed made on February 29, 1996. Thus, the recordation of the mortgage would not have been for antecedent debt and there would be no preference. That did not happen. The recordation of the mortgage is, thus, deemed to have occurred on the date of perfection when it became effective as to third parties. The recordation of the mortgage, thus, was a transfer for antecedent debt.[6]

---

4. If a transfer is not perfected before the filing of the debtor's bankruptcy petition, the transfer is deemed to have occurred immediately before the filing of the bankruptcy petition, except where the transfer is perfected after the filing but within ten days of the time the transfer took effect between the parties. See 11 U.S.C. § 547(e)(2)(C). A transfer may not occur, however, until the debtor has acquired rights in the property transferred. *Id.* § 547(e)(3).

5. Or twenty days, as set forth in § 547(c)(3). *See* Part C.

6. The consequence of section 547(e) is that a delay in perfecting a transfer of the debtor's

property pursuant to nonbankruptcy law, can postpone the timing of the transfer for purposes of *section 547. This postponement increases the* risk that the transfer will have occurred during the preference period, and thereby increases the risk that the transfer is an avoidable preference. Creditors manage this risk by quickly perfecting transfers of a debtor's property to them. Section 547 thereby achieves the goal of the discouraging secret, i.e., unperfected transfers that can mislead creditors as to the true size of the debtor's estate.

1 DAVID G. EPSTEIN ET AL., BANKRUPTCY § 6–11, at 543 (1992).

## C. The Enabling Loan Defense

■ Section 547(c)(3) of the Bankruptcy Code provides that the trustee may not avoid under § 547 a transfer that creates a security interest in property acquired by the debtor:

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property.

This is the so-called "enabling loan" or "purchase money security interest" defense to preference avoidance. Section 547(e)(2)(A), in complimentary fashion, provides an exception to the ten-day time limitation set forth therein for transfers covered by § 547(c)(3)(B). By reason of this exception, a purchase money transaction covered by § 547(c)(3)(B) is considered *made* on the date of perfection, if such perfection occurs within twenty days from the date a debtor takes possession of property.

The parties stipulated that all the elements of proof required for application of § 547(c)(3)(A) are present. They agreed that the mortgage in this case was a purchase money security interest given to secure the new mortgage funds, that such funds were given at the time the mortgage was signed, and that such funds were given for enabling, and actually did enable, the Debtors to acquire the property. The Trustee further acknowledged, at the hearing, that the mortgage was given within twenty days of the date the Debtors took possession of the property, as provided by § 547(c)(3)(B).

The Trustee argues, however, that § 547(c)(3) does not apply to real estate transactions. He has cited no authority for this position and I have found none. It is true that virtually every case decided under § 547(c)(3) involves personal property such as cars, machinery, equipment, and similar items.[7] Indeed, the elements of proof required to establish the § 547(c)(3) defense are steps normally occurring in the context of perfection of security interests under Article 9 of the Uniform Commercial Code. Nonetheless, a leading commentary points out that the literal language of § 547(c)(3), when read with other provisions of the Bankruptcy Code, applies to a real estate transaction:

The other scope question is whether (c)(3) applies when the collateral is real property. Again, the literal language answers, "Yes." The section applies to a "transfer" that creates an enabling "security interest" in "property." Although the U.C.C. limits the creation of a "security interest" to personal property, the Bankruptcy Code defines the term to mean "lien created by an agreement." "Lien" means "charge against or interest in property to secure payment of a debt or performance of an obligation." "Property" is not defined but is in the definition of "transfer," which is "as broad as possible," and universally includes realty as well as personalty. We would therefore conclude that (c)(3) applies to purchase-money mortgages and other consensual encumbrances on

---

7. The most significant such case is *Fidelity Financial Services, Inc. v. Fink,* — U.S. —, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998). In *Fidelity,* the debtor purchased a new car with funds provided by Fidelity. She gave Fidelity a note secured by the car but Fidelity failed to perfect its security interest within the twenty day time limit of § 547(c)(3)(B). Missouri law deemed perfection of a security interest to have occurred on the date of delivery, if all the necessary papers were recorded within thirty days of delivery. The Supreme Court held that perfection must occur within 20 days as set forth in § 547(c)(3)(B), regardless of Missouri law on the subject. *Fidelity* resolved a long-standing split in the courts on the question of whether state law deemed perfection could trump the federal statutory definition found in § 547(c)(3)(B). *See* — U.S. at — n. 2, 118 S.Ct. at 653 n. 2. While *Fidelity* deals with the same Bankruptcy Code provision, it sheds little light on the issue presented to me, other than that which may be gleaned from the Court's careful parsing of the statutory language and literal reading thereof and its holding that state perfection law yields to federal preference law where the two are in conflict.

real property. No court has specifically so held, but no other court has decided the question the other way.

1 EPSTEIN ET AL., *supra* § 6–33, at 626–27 (1992) (emphasis in original) (footnotes omitted). *See also In re Cooper*, 98 B.R. 294, 297–98 (Bankr.W.D.Mich.1989) (concluding that the term "security interest" as used in § 1322(b)(2) includes both mortgages and land contracts on real estate); *In re Engstrom*, 33 B.R. 369, 373 (Bankr.D.S.D.1983) ("security interest" as used in § 552(b) includes mortgages on real estate; this is true whether security interest arose under Article 9 of the Uniform Commercial Code or under real property mortgage law).

The reasoning set forth by the quoted treatise is sound; I can add little, if anything, to the analysis. In addition, the few cases that can be found in which § 547(c)(3) and real estate are involved seem to assume that the defense applies. *See Waldschmidt v. Mid–State Homes, Inc. (In re Pitman)*, 843 F.2d 235, 241 n. 2 (analyzing nonenabling loan on real estate under § 547(c)(1), but recognizing application of § 547(c)(3) defense to enabling loan in real estate context); *Carter v. Homesley (In re Strom)*, 46 B.R. 144, 149 (Bankr.E.D.N.C.1985) (purchase money mortgage on real estate was not protected by § 547(c)(3) enabling loan defense because the requirements of that section had not been satisfied; assumes without analysis that § 547(c)(3) is broad enough to apply to and protect transfers of real estate). Thus, I hold that the Trustee may not avoid Fidelity's mortgage because it was an enabling loan transaction within the meaning of § 547(c)(3) and all elements of proof under that section have been established.

D. CONTEMPORANEOUS EXCHANGE FOR NEW VALUE

My ruling on the enabling loan defense should resolve this dispute. Fidelity wins because it has succeeded in establishing all elements of a § 547(c)(3) defense and because I have concluded that the defense is applicable to a real estate transaction. If § 547(c)(3) is not applicable, however, the question arises whether Fidelity has established a contemporaneous exchange for new value defense under § 547(c)(1).[8] On this issue the Trustee argues that 1) § 547(c)(3) does not apply; 2) the only available defense is contemporaneous exchange for new value; and 3) Fidelity cannot defend on this ground because it did not perfect within the ten-day time limit set forth in § 547(e)(2). Fidelity asserts that, if the § 547(c)(3) defense is not available, then this was a contemporaneous exchange for new value under § 547(c)(1) because the delivery of the mortgage and the recordation of the mortgage were "substantially contemporaneous."

Section 547(c)(1) provides that the trustee may not avoid an otherwise preferential transfer:

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). To establish a defense under § 547(c)(1), the recipient of a transfer must show by a preponderance of the evidence that both parties intended the transfer to be a contemporaneous exchange for new value and that the exchange was, in fact, contemporaneous. *Jones Truck Lines v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326–27 (8th Cir.1997); *Tyler v. Swiss Am. Securities, Inc. (In re Lewellyn & Co., Inc. )*, 929 F.2d 424, 427 (8th Cir.1991); *Official Plan Committee v. Expeditors International of Washington, Inc. (In re Gateway Pacific Corp.)*, 214 B.R. 870, 876 (8th Cir. BAP 1997). The parties concede that they intended the transfer to be a contemporaneous exchange for new value. But, such intention is irrelevant if the exchange is not actually "substantially contemporaneous." *Jones Truck Lines*, 130 F.3d at 326–27; *Lew-*

---

8. As I indicated on the record, while I am not in the habit of deciding difficult issues I do not need to decide, my interpretation of the enabling loan defense has no precedent in this Circuit and only minimal discussion elsewhere. Therefore, I deem it prudent to address the second claim.

*ellyn,* 929 F.2d at 428; 1 Epstein et al., *supra,* § 6–27, at 602–03. The issue before me is whether a transfer that was not perfected within the ten-day time limit of § 547(e)(2) is "substantially contemporaneous" with the new value given to the debtor.[9] In other words, does delay in perfecting beyond ten days render the exchange not only antecedent, but also not "substantially contemporaneous."

Two conflicting lines of authority have developed to answer this question. The first, led by the Sixth Circuit's opinion in *Ray v. Security Mutual Finance Corp. (In re Arnett),* 731 F.2d 358 (6th Cir.1984), holds that an exchange involving a security transaction cannot be substantially contemporaneous unless perfection occurs within the ten-day grace period of § 547(e)(2).[10] The second, led by the Seventh Circuit's decision in *Pine Top Insurance Co. v. Bank of America National Trust Savings Ass'n,* 969 F.2d 321 (7th Cir.1992), holds that "substantially contemporaneous" is a flexible term and that a case by case analysis is required. Each line of authority has its following.[11]

I believe *Arnett* and its progeny to be the better reasoned. In *Arnett,* a nonenabling consolidation loan on a car was made 33 days before the lender perfected its security interest. The lender argued that the parties intended a "substantially contemporaneous" exchange and, in fact, the delivery of the loan proceeds and the perfection of the security interest were "substantially contemporaneous." The *Arnett* court held to the contrary.

> [W]e are also persuaded that expansion of section 547(c)(1)'s reference to contemporaneity beyond 10 days in the context of transfers of security interests is erroneous. The particular problems posed by the delay between creation and perfection of security interests were well recognized by Congress. One of the principal purposes of the Bankruptcy Reform Act is to discourage the creation of "secret liens" by invalidating all transfers occurring within 90 days prior to the filing of the petitions. Thus, creditors are discouraged from waiting until the debtor's financial troubles become all-too-manifest before recording security interests. Section 547(e)(2)(A) and (B) reflect this concern by providing

9. The issue is not whether § 547(c)(3) is the exclusive remedy available in a purchase money security transaction:

> The majority of courts have concluded ... that section 547(c)(1) does not apply to consensual, enabling, i.e., purchase-money liens. The principal reason is that section 547(c)(3) is expressly dedicated entirely to such liens, and Congress must therefore have intended (c)(3) as the exclusive source of protection for them. As a result, a purchase-money lien that does not satisfy the requirements of (c)(3) cannot be saved, alternatively, by (c)(1).

1 EPSTEIN ET AL, *supra,* § 6–24, at 589 (footnotes omitted). *See, e.g., Gower v. Ford Motor Credit Co. (In re Davis),* 734 F.2d 604, 606 (11th Cir. 1984); *Valley Bank v. Vance (In re Vance),* 721 F.2d 259, 261 (9th Cir.1983).

This is in contrast to the general rule that the exceptions provided in subsection (c) of § 547 are cumulative in nature and can be used separately or jointly. 1 EPSTEIN ET AL., *supra,* § 6–22, at 587 (quoting S.REP. No. 95–989, at 88 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5874; H.R.REP. No. 95–595, at 88 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6329).

The question I am addressing, however, is whether, if this transaction is not within the scope of § 547(c)(3) because this is a real estate transaction, Fidelity has established the elements of a § 547(c)(1) defense.

10. There is a line of authorities suggesting that (c)(1) does not apply to security transactions at all, but is rather limited to check or other cash equivalent transactions. See 1 EPSTEIN ET AL, *supra,* at § 6–24, at 589–90. This construction of the statute has been overwhelmingly rejected. *See, e.g., id.; Countryman, supra,* at 765.

11. Cases holding that perfection of a nonpurchase money security transaction outside the ten days set forth in § 547(e)(1)(B) is not "substantially contemporaneous" include *W.T. Vick Lumber Co., Inc. v. Chadwick (In re W.T. Vick Lumber Co., Inc.),* 179 B.R. 283, 291 (Bankr.N.D.Ala. 1995); *Bank One, Dayton, N.A. v. Bavely (In re Phillips),* 103 B.R. 893, 895 (Bankr.S.D.Ohio 1989); *Anderson v. DeLong (In re Chicora Group),* 99 B.R. 715, 717 (Bankr.D.S.C.1988); *Northwest Erection, Inc. v. First Bank (In re Northwest Erection, Inc.),* 56 B.R. 612, 615 (Bankr.D.Mont. 1986). Cases siding with *Pine Top* include *Dye v. Rivera (In re Marino),* 193 B.R. 907 (9th Cir. BAP 1996); *In re Air Vermont, Inc.,* 45 B.R. 817, 820 (D.Vt.1984); *Telecash Indus., Inc. v. Universal Assets (In re Telecash Indus., Inc.),* 104 B.R. 401, 404 (Bankr.D.Utah 1989); *Barr v. Reneau (In re Lyon),* 35 B.R. 759, 762 (Bankr.D.Kan.1982); *General Motors Acceptance Corp. v. Martella (In re Martella),* 22 B.R. 649, 653 (Bankr.D.Colo. 1982); and *Jahn v. First Tennessee Bank (In re Burnette),* 14 B.R. 795, 803 (Bankr.E.D.Tenn. 1981).

that a transfer of a security interest relates back to the date of the underlying transaction if perfection occurs no more than 10 days afterwards; if perfection occurs more than 10 days later, the transfer is deemed to occur at the date of perfection.

The lower court's broad reading of § 547(c)(1) effectively negates § 547(e)(2)....

....

*In light of the explicit grace periods provided for perfection of security interests in sections 547(e)(2) and 547(e)(3),* Congress has clearly struck the balance in favor of repose in this area of the law.

*In re Arnett,* 731 F.2d at 363–64 (emphasis added).

Professor Countryman, in his lengthy and seminal article on the subject, urges that *Arnett* is correct:

> ... [T]he [*Arnett* case] reached a correct result in not employing section 547(c)(1) to expand the ten day period for perfection allowed by section 547(e)(2). Section 547(e)(2) provides that if a transfer is not perfected within ten days after it takes effect between debtor and transferee-creditor, the transfer will "[f]or the purposes of this section" (including section 547(c)(1)) "occur" at a later time. Nothing in the statutory language or the legislative history indicates that Congress intended section 547(c)(1) to authorize departures from the precise ten day perfection period of section 547(e)(2). Therefore, courts should confine the language "in fact ... substantially contemporaneous" in section 547(c)(1)(B) to cases in which a delay "in fact" occurs in the time when the transfer "takes effect" between the debtor and transferee-creditor, which was the situation in *Dean v. Davis.*

Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 VAND.L.REV. 713, 765 (1985) (footnote omitted).

In *Dean v. Davis,* 242 U.S. 438, 443, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917), the Supreme Court held that a mortgage executed and recorded to secure an advancement of funds made more than a week earlier was not a preference under § 60(b) of the Bankruptcy Act because the mortgage was given for a "substantially contemporaneous advance" and not for an antecedent debt. *Dean v. Davis* marked the beginning of the contemporaneous exchange for new value defense, a defense which was subsequently codified in § 547(c)(1) of the Bankruptcy Reform Act of 1978. *See* 1 EPSTEIN ET AL., *supra,* § 6–27, at 603; Countryman, *supra,* at 760; Richard F. Duncan, *Section 547(c)(1) and Delayed Perfection of Security Interests in the Ninth Circuit:* In re Vance, *721 F.2d 259 (9th Cir.1983),* 58 AM.BANKR.L.J. 269, 273 (1984). The Supreme Court opinion is often cited as support for the proposition that the preference laws are not to be applied to exchanges which were intended by both parties to be a contemporaneous exchange. *See, e.g., Air Vermont,* 45 B.R. at 820; *Lyon,* 35 B.R. at 762.

However, reference to this seminal Supreme Court opinion, in my view, precisely demonstrates why the *Pine Top* decision and its progeny reach an incorrect conclusion. *Pine Top* was not a case decided under the Bankruptcy Code, but was in fact decided under the preference provisions of the Illinois Insurance Code which did not include a specific defense for otherwise preferential transfers which involved a contemporaneous exchange for new value. The court did, however, craft its establishment of this defense by reference to § 547 of the Bankruptcy Code. *Pine Top* relied heavily on the presence of the word "substantially" in the statutory language:

> However, the modifier "substantial" makes clear that contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances (e.g., length of delay, reason for delay, nature of the transaction, intention of the parties, possible risk of fraud) surrounding an allegedly preferential transfer. We conclude that the two—to three-week delay here did not defeat the substantially contemporaneous nature of this exchange.

*Pine Top,* 969 F.2d at 328 (citing *In re Martella,* 22 B.R. 649, 653 (Bankr.D.Colo. 1982); *In re Lyon,* 35 B.R. 759, 763 (Bankr. D.Kan.1982); *In re Burnette,* 14 B.R. 795,

803 (Bankr.E.D.Tenn.1981); *In re Paul Delaney Co.*, 26 F.2d 937, 940 (W.D.N.Y.1928), *aff'd*, 30 F.2d 1018 (2d Cir.1929)). Although the *Pine Top* court recognized that "[i]n the bankruptcy context, contemporaneity is often defined by virtue of 11 U.S.C. § 547(e)(2)(A), which creates a ten-day grace period in which to perfect a security interest and avoid preference liability," it dismissed § 547(e)(2)(A) as "at most a guideline here because the Illinois Insurance Code lacks a provision corresponding to § 547(e)." *Id.* at 328 n. 8.

One of the most recent cases to follow the *Pine Top* decision, *Dye v. Rivera (In re Marino)*, 193 B.R. 907, 915 (9th Cir. BAP 1996), has urged that, since one of the purposes of preference law is to avoid creditors rushing to the courthouse "to dismember the debtor," courts were free to expand the term "substantially contemporaneous" to security transactions outside the ten-day time limit of § 547(e)(2).

Reflecting back to the underpinnings of the contemporaneous exchange for new value defense, as first articulated by the Supreme Court in *Dean v. Davis*, however, demonstrates the fallacy in suggesting that "substantially" means "flexible," at least insofar as real property and security transactions are concerned.[12] Yes, in *Dean* the Supreme Court held that a transfer occurring subsequent to a creditor's provision of new value to the debtor can be a "substantially contemporaneous exchange," even though the transfer and the provision of new value did not occur simultaneously. In § 547(e)(2), however, Congress has since *specifically* articulated its intent to discourage secret liens against property of the debtor by postponing the effect of a transfer that was not perfected within ten days of its occurrence. Thus, pursuant to the provisions of § 547(e)(2), the perfection of a transfer beyond ten days[13]

after the date of a contemporaneous exchange turns the new value received by the debtor into an antecedent debt. *See* 5 LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 547.05[5][a], at 547–78 (15th ed. rev. 1997); 3 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 57:13, at 57–64 (1994 & Supp.1997). Contrary to *Marino's* pronouncement that there is no statutory language or legislative history to support the conclusion reached in *Arnett*, there is *indeed* such language: where security interests not covered by § 547(c)(3) are concerned, the language is that provided in § 547(e)(2).

Finally, to rely, as *Marino* does, on one purpose of § 547 ("avoiding a 'call to dismember' ") while ignoring another purpose of the preference provision (elimination of secret liens) is not terribly helpful.[14] For these reasons, I find *Pine Top*, a nonbankruptcy case, and its progeny, the most recent of which is *Marino*, to be unpersuasive. I specifically reject the notion that "Section 547(c)(1) is intended to be inconsistent with section 547(e); its proper role is to protect recipients of substantially contemporaneous exchanges against the sometimes arbitrary lines drawn by the artificial timing rules of section 547(e)." *See* Duncan, *supra*, at 277.

Moreover, even *Marino*, the most recent of the decisions allowing perfection outside a ten-day time frame to be considered "substantially contemporaneous," finds some evidence that the delay was reasonable or beyond the control of the lender. *See Marino*, 193 B.R. at 915 ("Where there is a reasonable and plausible explanation for the delay, there should be no concern that a creditor was recording a secret lien in anticipation of a bankruptcy."). *See also Pine Top*, 969 F.2d at 328 (lender consistently asked borrower to promptly execute security agreement, but it did not); *Telecash Indus.*, 104 B.R. at 404 ("[W]here delayed perfection of a

---

12. In transactions that do not involve perfection, such as personal property transactions not involving security, the provisions of § 547(e)(2) do not apply.

13. Or twenty days if § 547(c)(3) applies.

14. The second piece of useful background information is that section 547 is designed to serve a subsidiary purpose beyond its main goal of dis-

couraging discriminatory dismemberment of the debtor's estate on the eve of bankruptcy. The secondary purpose is to discourage secret transfers that could mislead the debtor's creditors as to the true size of the debtor's estate. This purpose is achieved by the somewhat cumbersome language of section 547(e).

1 EPSTEIN ET AL., *supra*, § 6–11, at 542.

security interest may be satisfactorily explained, and in the absence of dilatoriness or negligence on the part of a transferee, the transfer may still be found 'substantially contemporaneous'. . . ."). In this case, Fidelity has offered no excuse for its delayed perfection.

Accordingly, I conclude that if this transaction is within the scope of § 547(c)(1) and not § 547(c)(3), which I truly doubt, the exchange was not substantially contemporaneous. Having concluded that § 547(c)(3) applies, however, judgment shall be entered for the Defendant.

ACCORDINGLY, IT IS HEREBY ORDERED THAT Plaintiff's action is dismissed with prejudice, on the merits, and without cost to the parties and Plaintiff shall take nothing from Defendant by reason of such claim.

LET JUDGMENT BE ENTERED ACCORDINGLY.