**In re Donald & Dena MESSAMORE, Debtors.**

**Michelle L. Vieira, Chapter 7 Trustee, Plaintiff,**

**v.**

**Anna National Bank, Defendant.**

**Bankruptcy No. 99–41688.**

**Adversary No. 99–4113.**

United States Bankruptcy Court, S.D. Illinois.

July 21, 2000.

Michelle L. Vieira, Carbondale, IL, for plaintiff.

Gary E. Stark, Cairo, IL, for defendant.

### OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

The trustee in this case seeks to avoid, as a preference, the lien of Anna National Bank ("Anna Bank") on the debtors' mobile home. Anna Bank's lien, taken to refinance the debtors' obligation to another creditor, Green Point Credit ("Green Point"), was not perfected for more than two months following the parties' transaction because of a delay in obtaining the

mobile home title showing a release of Green Point's lien. The trustee contends that, as a result, the debtors' obligation to Anna Bank was rendered an antecedent debt, and Anna Bank's perfection of its lien within 90 days of bankruptcy constituted a transfer of the debtors' interest in property "on account of" this antecedent debt, which is voidable under 11 U.S.C. § 547(b).[1] Anna Bank responds that, due to the circumstances surrounding the transaction, perfection of its lien did not constitute a transfer of the debtors' property on account of an antecedent debt and, thus, perfection of its lien should be excepted from avoidance under § 547.

The facts are undisputed. On June 24, 1999, the debtors, Donald and Dena Messamore, entered into a loan transaction with Anna Bank to refinance a debt to Green Point secured by their mobile home. Green Point had originally financed the debtors' purchase of the mobile home in April 1996 and held a lien on its title. By letter dated June 29, 1999, Anna Bank mailed the payoff amount to Green Point and requested Green Point to forward the mobile home title directly to Anna Bank. See Def.'s Brief, filed March 21, 2000, Ex. A. On July 6, 1999, Green Point released its lien on the mobile home title. However, instead of mailing the title to Anna Bank, Green Point forwarded it to the debtors.

 Anna Bank subsequently obtained the title from the debtors and, on August 25, 1999, mailed it to the Illinois Secretary of State along with an application requesting a corrected title showing Anna Bank as lienholder. The Secretary of State received the application and title on August 30, 1999.[2] On September 13,

1. Section 547(b) allows for the avoidance of a transfer of the debtor's interest in property that is made "for or on account of an antecedent debt" and within 90 days of bankruptcy. See 11 U.S.C. § 547(b)(2).

2. Under Illinois law, a lien on a vehicle, including a mobile home, is perfected by the delivery to the Secretary of State of the exist-

ing certificate of title and an application for a new title showing the lienholder's name and address. See 625 Ill.Comp.Stat. 5/3–202(b) (West 1999). "Delivery" occurs when the Secretary of State actually receives the requisite title documents, not the date such documents are placed in the mail. See In re Jarvis, 242 B.R. 172, 176 (Bankr.S.D.Ill.1999).

1999, the debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code.

The trustee brought this preference action, alleging that because Anna Bank failed to perfect its lien on the debtors' mobile home within the time period specified for precluding avoidance as a preference, such perfection resulted in a transfer on account of an antecedent debt that must be avoided.[3] In its answer, Anna Bank admitted that perfection of its lien constituted a transfer of the debtors' interest in property but denied that such transfer was on account of an antecedent debt. Anna Bank additionally raised several affirmative defenses, including that the transfer was intended to be and was, in fact, a substantially contemporaneous exchange for new value given to the debtors.[4]

At hearing on the trustee's complaint, Anna Bank advanced a further argument that under the "earmarking doctrine" as applied in *In re Heitkamp*, 137 F.3d 1087 (8th Cir.1998), and *In re Ward*, 230 B.R. 115 (8th Cir. BAP 1999), no avoidable preference occurred in this case because, by virtue of the debtors' agreement to refinance their obligation to Green Point with the proceeds of Anna Bank's loan, Anna Bank's interest in the mobile home was merely substituted for that of Green Point. Consequently, the bank contends, there was no transfer of the debtors' interest in

property and no diminution of the debtors' estate. Anna Bank asserts that, by reason of the earmarking doctrine, the trustee has failed to establish one of the requisite elements for avoidance under § 547(b)— "transfer of an interest of the debtor in property"—and, thus, the trustee's complaint to avoid the bank's lien as a preference must fail.[5]

 The earmarking doctrine invoked by Anna Bank is a judicially created exception to § 547(b) deriving from the requirement that a transfer, in order to be preferential, must be "of an interest of the debtor in property." [6] Essentially, a transfer is preferential only if it diminishes the fund to which other creditors can look for payment of their debts, thus making it impossible for similarly situated creditors to obtain as great a percentage as the favored creditor. *See* 5 *Collier on Bankruptcy*, ¶ 547.03.[2], at 547–20 to 547–21, 547–23 to 547–24 (15th ed. rev.2000). If a third party, such as a surety or guarantor, makes a payment to a creditor of the debtor, there is no transfer of the debtor's property and, since the debtor's funds are not diminished, this transfer is not a preference. *Id.* at 547–21.

 Similarly, when a debtor borrows money from a third party to pay a specific

---

**3.** Although the trustee's complaint referred to the 20–day grace period for perfecting a purchase money security interest, *see* 11 U.S.C. § 547(c)(3)(B), the loan from Anna Bank was a refinancing of the debtors' obligation on the mobile home and not a purchase money loan. Consequently, the applicable grace period is the 10–day limit of § 547(e)(2)(A), which provides that a transfer is made "at the time the transfer takes place ... if such transfer is perfected at, or within 10 days after, such time[.]" 11 U.S.C. § 547(e)(2)(A).

**4.** Section 547(c)(1) excepts an otherwise preferential transfer from avoidance by the trustee if the transfer was intended by the parties to be a "contemporaneous exchange for new value given to the debtor" and the transfer was, in fact, "substantially contemporaneous." *See* 11 U.S.C. § 547(c)(1).

**5.** Although Anna Bank never amended its answer to deny, rather than admit, that perfection of its lien constituted a transfer of the debtors' interest in property, the Court will consider Anna Bank's argument concerning the earmarking doctrine as though such amendment had been made.

**6.** Under § 547, "transfer of an interest of the debtor in property" is a threshold requirement of an avoidable preference. *See* 11 U.S.C. § 547(b). The transfer must also be (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made on or within 90 days before the filing of the petition; and (5) must enable the creditor to receive more than such creditor would receive in a Chapter 7 liquidation of the estate. *Id.; see In re Smith*, 966 F.2d 1527, 1529 n. 1 (7th Cir.1992).

creditor, transfer of the borrowed funds does not constitute a preference if the loan is conditioned on payment of the designated creditor and the creditor is, in fact, paid. *See In re Smith,* 966 F.2d 1527, 1533 (7th Cir.1992). In such an instance, the funds are said to be "earmarked" for the creditor in question and never become property of the debtor. *Id.* The transfer is not preferential because the debtor never exercises control over the new funds, and the debtor's property—the fund out of which existing creditors can be paid—is not diminished. *Id.*

■ The earmarking doctrine, as developed in case law, is clearly applicable in a refinancing situation to determine whether the debtor's payment of an existing creditor with funds borrowed from a new creditor constitutes a preferential transfer—that is, whether such payment is a transfer of the debtor's "interest in property" to pay the debt owed to the first creditor. This case, however, presents an entirely different question. Here, it is not the transfer of funds to the debtors' original creditor, Green Point, that is at issue,[7] but the transfer that occurred when the new creditor, Anna Bank, perfected its lien on the debtors' mobile home more than 10 days after execution of the parties' loan agreement. Under the definition of "transfer" applicable in preference actions,[8] the debtors' transfer of an interest in their mobile home did not occur at the time of the loan transaction when they incurred their obligation to Anna Bank. Rather, because Anna Bank failed to perfect within 10 days after the parties' transaction, transfer of the debtors' interest is deemed to have occurred at the time Anna Bank perfected its lien over two months later. *See* 11 U.S.C. § 547(e)(2)(B). It is this latter transfer, the transfer of the debtors' interest in the mobile home to Anna Bank to secure their pre-existent obligation, that the trustee alleges is preferential.

Although the debtors' transfer to Anna Bank arose in the context of a refinancing arrangement, it did not involve the payment of funds by a third party or, indeed, the payment of borrowed funds at all. For this reason, the earmarking doctrine has no logical relevance to such transfer. The transfer to Anna Bank that occurred upon perfection of its lien was separate and distinct from the transfer that occurred when Green Point was paid with borrowed funds, and this transfer was clearly a transfer of the debtors' interest in property, as it depended on the debtors' grant of a security interest to Anna Bank. The earmarking doctrine, therefore, is inapplicable in the present case to shield the debtors' transfer to Anna Bank from avoidance as a preference.

In so ruling, the Court declines to follow the reasoning of the *Heitkamp* and *Ward* cases, cited by Anna Bank in support of its position. Like the present case, *Heitkamp* and *Ward* each involved a preference action against a new creditor who supplied funds to pay a previous creditor but who neglected to timely perfect its security interest in the debtor's property. The court in each case found the earmarking doctrine applicable as a defense for the new creditor. However, the court's analysis failed to distinguish between the transfer of borrowed funds to the original creditor

---

**7.** Indeed, because the obligation to Green Point was secured, the debtors' repayment of this debt with borrowed funds could not be preferential, as such transfer would not enable Green Point to receive more than it would receive in a Chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(5).

**8.** Section 547(e) provides in pertinent part:
(2) For purposes of [§ 547], ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, ... [or]
(B) *at the time such transfer is perfected, if such transfer is perfected after such 10 days* [.]

11 U.S.C. § 547(e)(2) (emphasis added).

and the subsequent transfer that occurred when the new creditor belatedly perfected its security interest in the debtor's property. The earmarking doctrine, while appropriate to prevent avoidance of the transfer of borrowed funds to the original creditor, was wrongly invoked as a defense for the new creditor's tardy perfection.

In *Heitkamp*, the debtors, who owed several subcontractors for goods and services supplied in constructing a house, obtained a loan from the defendant bank, and the bank took a second mortgage on the house. *See* 137 F.3d at 1088. The bank issued cashier's checks payable to specific subcontractors and required the debtors to obtain mechanics' lien waivers from the subcontractors in exchange for the checks. However, due to an oversight, the bank did not record its mortgage until four months later, shortly before the debtors' bankruptcy filing. *See id.* The trustee sued to set aside the debtors' transfer of the second mortgage interest to the bank as a preference.

The Eighth Circuit Court of Appeals, although purportedly following established earmarking doctrine, *see* 137 F.3d at 1088, ruled that the doctrine applied in that case to preclude avoidance of the bank's second mortgage. The court made no mention of the bank's failure to timely perfect its mortgage but found, rather, that the debtors' estate was not diminished because the bank essentially "took over the subcontractors' security interest in the house." 137 F.3d at 1089. The court further determined that the transfer of the mortgage interest to the bank "merely replaced the subcontractors' security interest" and concluded, therefore, that there was no transfer of the debtors' property interest avoidable under § 547(b). *See id.*

Contrary to the court's assertions in *Heitkamp*, the bank did not derive its interest in the debtors' house from the subcontractors, through assignment or otherwise, but from the debtors themselves through execution of the second mortgage. The bank, as a secured party, was obligated to perfect its mortgage interest by recording, and, under the definition of "transfer" applicable in preference cases, transfer of the debtors' interest did not occur until the bank actually perfected its mortgage four months later. *See* 11 U.S.C. § 547(e)(2). Thus, because of the bank's delay, the transfer occurring at that time constituted a transfer on account of the debtors' previously incurred obligation to the bank, and the earmarking doctrine, despite the *Heitkamp* court's ruling, was inapplicable to prevent avoidance of the bank's mortgage under § 547(b).

The court in *Ward*, a bankruptcy appellate panel for the Eighth Circuit, noted that *Heitkamp* "represents a major change in the application of the [earmarking] doctrine in this circuit." *See* 230 B.R. at 119. Prior to *Heitkamp*, the court stated, the doctrine was applied to determine whether a transfer to an old or previous creditor was preferential, while the *Heitkamp* court "for the first time" applied the doctrine in addressing a transfer of security to a new creditor who loaned money for payment to an old creditor. *Id.* The *Ward* court, however, felt compelled to follow *Heitkamp* and held, on facts similar to the present case, that a creditor who refinanced the debtor's loan on a vehicle but who failed to perfect its lien on the vehicle title until 44 days later and shortly before bankruptcy was, nevertheless, protected from avoidance of its lien as a preference through application of the earmarking doctrine. 230 B.R. at 120.

Again, the Court believes the *Ward* court wrongly invoked the earmarking doctrine in a context in which the concept does not fit. *See* David Gray Carlson & William H. Widen, *The Earmarking Defense to Voidable Preference Liability: A Reconceptualization*, 73 Am.Bankr.L.J. 591, 602 n. 63 (1999). Although earmarking is appropriate in a refinancing situation as a defense for the old creditor who receives borrowed funds as payment on an antecedent debt, it is illogical to say there was no transfer of the debtor's interest in

property to the new creditor when the debtor has granted a security interest to that creditor. It goes without saying, moreover, that the debtor's transfer of a property interest—the grant of a security interest—to the new creditor resulted in a diminution of property of the estate, since a transfer "by way of payment on or security for" an antecedent debt diminishes the assets available for other creditors. *See* 5 *Collier on Bankruptcy,* ¶ 547.03[4], at 547–33. Although the *Ward* and *Heitkamp* courts determined that there was no diminution of the debtor's estate because one secured creditor was simply substituted for another, the new creditor was required to perfect before its security interest became effective between the parties. Until that time, the new creditor was unsecured, and its delayed perfection resulted in a transfer made "for or on account of an antecedent debt." *See id.,* ¶ 547.03[4], at 547–34, ¶ 547.05, at 547–69.

■ The *Heitkamp* and *Ward* courts' rulings are more understandable when viewed, not as an application of the earmarking doctrine, but as a determination that the new creditor's perfection was sufficiently "contemporaneous" with the parties' loan transaction to be excused from avoidance under § 547(c)(1). *See id.* The "contemporaneous exchange" defense— which excepts an otherwise preferential transfer from avoidance where (1) the transfer was intended to be a "contemporaneous exchange for new value given to the debtor" and (2) the exchange was, in fact, "substantially contemporaneous," *see* 11 U.S.C. § 547(c)(1)[9]—provides relief for a secured creditor who fails to timely perfect. *See In re Dorholt, Inc.,* 239 B.R. 521, 524–526 (8th Cir. BAP 1999); *In re Ste-*

*phens,* 242 B.R. 508, 510 (D.Kan.1999). Under the facts of *Heitkamp* and *Ward,* it is apparent the parties intended the new creditor to have a perfected security interest in exchange for its advance of funds to pay off the first creditor and discharge the debtor's obligation to that creditor. Thus, although the *Heitkamp* and *Ward* decisions reflect an extremely liberal view of "contemporaneity," given the delay of four months for perfecting in *Heitkamp* and the delay of 44 days in *Ward,* the result-oriented approach of those cases can be interpreted, not as an application of the earmarking doctrine, but as a covert application of the "contemporaneous exchange" defense of § 547(c)(1). *See* Carlson & Widen, *Earmarking Defense, supra.*

■ In this case, Anna Bank pleaded § 547(c)(1) as an affirmative defense in its answer, but made no further argument concerning this defense at hearing on the trustee's complaint.[10] Despite the bank's failure to pursue this defense, the Court will examine the facts as stipulated to by the parties to determine whether, in fact, the transfer to Anna Bank that occurred upon perfection of its lien came within the "contemporaneous exchange" exception to avoidance as a preference.

The first element of § 547(c)(1) concerning the parties' intent is easily met here, as the trustee concedes the parties intended that Anna Bank be secured by a lien on the debtors' mobile home in exchange for its payoff of the obligation to Green Point. Indeed, Anna Bank's letter to Green Point accompanying the bank's payoff check demonstrates its intent to obtain the mobile home title from Green Point, presumably so that Anna Bank could perfect its

---

**9.** In enacting the "contemporaneous exchange" defense of § 547(c)(1), Congress recognized that if a creditor provides new value in exchange for a preferential transfer, the estate has not been diminished and, therefore, the creditor is entitled to protection to the extent of the new value provided. *See* Lisa Sommers Gretcho, *The Versatile "Contemporaneous Exchange" Preference Defense,* 17–APR Am.Bankr.Inst.J. 32, 32 (1998).

**10.** The case was submitted to the Court on stipulated facts, and neither the trustee nor the bank sought to introduce further evidence through the testimony of witnesses. Instead, a hearing was held at which the parties presented legal argument on the stipulated facts.

own lien on the title. However, whether the exchange between Anna Bank and the debtors was, in fact, "substantially contemporaneous" is a more difficult question. The length of time between the parties' loan transaction on June 24, 1999, and the date of Anna Bank's perfection of its lien on August 30, 1999, was a period of 67 days. Even taking into account the delay occasioned by the necessity of obtaining the title from Green Point, a period of 50 days elapsed from July 6, 1999, when Green Point released its lien on the title, and August 25, 1999, when Anna Bank took action to perfect its lien by mailing the title and application to the Secretary of State.

The Seventh Circuit Court of Appeals has adopted a flexible approach to the concept of "contemporaneity" under § 547(c)(1), holding that the modifier "substantial" makes clear that a case-by-case inquiry is needed to determine whether a creditor's delay in perfecting defeats the "substantially contemporaneous" nature of an exchange.[11] *See Pine Top Ins. Co. v. Bank of America Nat. Trust & Sav. Ass'n,* 969 F.2d 321, 328 (7th Cir.1992); *In re McLaughlin,* 183 B.R. 171, 175 (Bankr. W.D.Wis.1995). Among the relevant circumstances to be considered are the length of the delay, the reason for the delay, the nature of the transaction, the intentions of the parties, and the possible risk of fraud. *Id.* The *Pine Top* court, in applying this standard, found that a two– to three-week delay in perfecting did not defeat the substantially contemporaneous nature of the transaction involved given the circumstances surrounding the transaction. In particular, the court noted that

the creditor in question took "immediate steps . . . to begin the process of collateralization" and that, despite the delay in executing all the necessary documents, there was no indication the parties ever retreated from their understanding. *Id.* at 329.

In this case, Anna Bank, too, acted quickly to "begin the process of collateralization," mailing its payoff and request for title to Green Point on June 29, 1999, five days after the loan transaction with the debtors. However, after that action, a long delay ensued, for which there is no explanation. The evidence shows that Green Point released its lien on the title promptly on July 6, 1999, and although Green Point mistakenly mailed the title to the debtors rather than to Anna Bank, there is no indication of what steps, if any, Anna Bank took to follow up on its request for the title. Such an unexplained delay gives rise to a multitude of questions concerning the Bank's—and, indeed, the debtors'—understanding of the transaction, questions for which Anna Bank has provided no answers.

As the party from whom recovery is sought in this action, Anna Bank has the burden of proof in establishing that an exception to avoidance of its lien as a preference exists. *See* 11 U.S.C. § 547(g). Anna Bank was given the opportunity to present evidence of the circumstances surrounding the parties' transaction. In the absence of any showing that its delay in perfecting was reasonable or occasioned by factors beyond its control, the Court finds that Anna Bank has failed to carry its burden of proof. *See McLaughlin,* 183 B.R. at 175–176.[12] Accordingly, the Court

**11.** Although technically not decided under § 547(c)(1), the Seventh Circuit's *Pine Top* decision represents one line of authority holding that an exchange involving a security transaction may be substantially contemporaneous even though not perfected within the grace period of § 547(e)(2)(A). *See In re Alexander,* 219 B.R. 255, 261 (Bankr.D.Minn. 1998). Given the Court's finding in this case regarding the bank's failure to meet even the more flexible standard of *Pine Top,* the Court

sees no necessity to consider the other line of authority represented by *In re Arnett,* 731 F.2d 358 (6th Cir.1984).

**12.** In *McLaughlin,* the court held that a creditor who offered no explanation of its delay in initiating the perfection process failed to carry its burden of proof under § 547(c)(1). The court found that the creditor had not provided a "reasonable explanation as to why the transaction took as long as it did," noting that

will enter judgment for the trustee on the trustee's complaint to avoid Anna Bank's lien as a preference.

SEE WRITTEN ORDER.

13 days elapsed between the date the creditor had all the necessary information and the date it began the perfection process. "When those 13 days are part of the 32 days that elapsed from attachment to perfection of [the creditor's] interest," the court stated, "perfection cannot be said to be contemporaneous." *Id.* at 176.

By contrast, the court in *In re Stephens,* 242 B.R. 508, 510, found that the creditor's perfection was "substantially contemporaneous" with the parties' loan transaction where the "the bank acted promptly in sending a check to [the first creditor] and in forwarding the appropriate registration documents to the Department of Motor Vehicles as soon as they were received from [that creditor]." Thus, the court stated, the evidence indicated that the "mere 14-day delay" between the loan transaction and the bank's perfection was "due to factors beyond the control of the bank." *Id.*