# CHARLESTON.

## BUTTS v. SUN LUMBER CO. *et al.*

### Submitted February 12, 1918.   Decided March 19, 1918.

1. CANCELLATION OF INSTRUMENTS—*Negotiable Note—Fraud—Equity Jurisdiction.*

   Equity has jurisdiction to cancel a negotiable note before maturity, which has been procured by the fraud of the payee, if it is still in his hands or the hands of an endorsee who took it with knowledge of such fraud. (p. 115).

2. EQUITY—*Dismissal on Merits—Effect.*

   The effect of a decree dismissing a bill on the merits of the case, is to overrule a demurrer on which no ruling had expressly been made. (p. 115).

3. SUBROGATION—*Extent of Right.*

   Subrogation entitles a person to no greater rights than the party had to whose rights he claims subrogation. (p. 119).

4. JUDGMENT—*Against Indorser—Release.*

   The holder of a note, who has recovered judgment thereon against the endorsers only, and who has no knowledge of equities against them in favor of the maker, may release such judgment without affecting his rights against the maker. (p. 119).

5. CONTRACTS—*Fraud—Hazard.*

   Elements of hazard do not necessarily render a contract fraudulent. (p. 121).

6. FRAUD—*Inference—Proof.*

   Fraud can not be inferred alone from facts and circumstances which are consistent with honest and fair dealings; it must be clearly proven. (p. 121).

7. EQUITY—*Dismissal Without Prejudice.*

   Where plaintiff avers a good cause for equitable relief, and fails to prove it, but does establish a right of action in tort against one of the defendants, it is not error to dismiss his bill without prejudice to his right to sue said defendant at law. (p. 123).

Appeal from Circuit Court, Upshur County.

Suit by Mrs. Ida M. Butts against the Sun Lumber Company and others.   Decree for defendants, and plaintiff appeals.

*Affirmed:*

*Chas. E. Hogg,* for appellant.

' *J. C. McWhorter,* for appellees.

WILLIAMS, JUDGE:

This suit was instituted by Mrs. Ida M. Butts against the Sun Lumber Company, the Mayton Lumber Company, the Parkersburg-Buckhannon Oil & Gas Company, corporations, William Post, C. D. Munson, French Thomas and U. G. Young, to enjoin the collection of a negotiable note executed jointly by the defendants, Sun Lumber Company and the Mayton Lumber Company for plaintiff's accommodation, dated January 31, 1913, and payable to her order at the Lewis County Bank, on the 1st of October, 1913, and endorsed by her to defendants William Post and C. D. Munson, and to compel them to deliver up said note for cancellation, on the alleged ground that its execution and endorsement had been procured by deception and false representations made to plaintiff by their alleged agent, the defendant U. G. Young. After said Post and Munson answered, denying any knowledge of the fraud charged in the bill against the Parkersburg-Buckhannon Oil & Gas Company and certain of its officers, concerning the execution by plaintiff, in January, 1911, of a certain other note payable to the Parkersburg-Buckhannon Oil & Gas Company for the sum of $5,000, which had been assigned, in due course, to Post and Munson, and on which they had recovered judgment against the Parkersburg-Buckhannon Oil & Gas Company and one Chas. P. Lynch, the endorsers thereon, in satisfaction whereof, with accrued interest, the note, which is the subject matter of this suit, was executed, and alleging that they had endorsed the last mentioned note, in due course and for a valuable consideration, to the Traders National Bank of Buckhannon, the plaintiff filed an amended and supplemental bill, making the aforesaid bank a party, and charging, on information and belief, that it, as well as said Post and Munson, had knowledge of her equities against said original note and, therefore, was not an innocent holder of the second note given in consideration of the first one.

U. G. Young demurred to the bill and amended bill, French Thomas both demurred and answered, as likewise did Post and Munson, and the Traders National Bank also answered. On the 11th of November, 1913, on motion of plaintiff, an order was made dismissing U. G. Young from the suit. The cause was submitted for final hearing on the joinders in the demurrers, general replications to the several answers, and on depositions of witnesses, taken and filed by the respective litigants, and a decree rendered dismissing plaintiff's bill, from which she prosecutes this appeal.

The court apparently did not pass directly upon the demurrers but did so indirectly, by dismissing the bills upon the merits, *Craig* v. *Craig,* 54 W. Va. 183, and much space in the briefs of counsel is occupied with elaborate discussions of the question of the sufficiency of the averments of the bill to show a cause for relief in equity. It is contended that plaintiff had a complete and adequate remedy at law and the only valid reason for going into a court of equity was to prevent Post and Munson from bringing an action at law against the makers of the note, and not against her as the endorser thereon, and thus deprive her of an opportunity to make a defense. Before considering the demurrers, let us state the material facts averred. Briefly they are, that plaintiff was induced by certain false and fraudulent representations made to her by one V. S. Lynch, the agent and officer of the Parkersburg-Buckhannon Oil & Gas Company, which are set out at length in the bill, on the truth of which she says she relied, to purchase 200 shares of the capital stock of said company, of the par value of $5,000 and execute her negotiable note therefor, payable to said company at the Commercial National Bank of Parkersburg, dated on the 31st of January, 1911; that said company endorsed the note to Charles P. Lynch, after he had been informed of plaintiff's equities respecting the same, and he thereafter, and before its maturity endorsed it to said Post and Munson for value; that after it became due and payable they brought suit against plaintiff, and the aforesaid endorsers thereon and, on the 7th of May, 1912, recovered a judgment for $5,381.46 against the endorsers only, plaintiff, the maker of the note, not having been served with process

and not appearing to the action; that said Oil & Gas Company was unsuccessful in business and became so embarrassed with debt it became necessary to sell its assets to meet its obligations; and pursuant to an offer to buy said assets made by the defendant French Thomas, the company's directors held a meeting on the 1st of January, 1913, and adopted a resolution to the effect that, if said Thomas would pay $3,040 in cash, and would also ''fully indemnify and save harmless this Company, and all of the endorsers on a certain note for $5,000.00 made by Ida M. Butts to this Company, and now held by Wm. Post & C. D. Munson by endorsement and transfer, and judgment thereon against the Company and Chas. P. Lynch,'' then said company would transfer to him all its assets, which are enumerated in the order and consisted of 15-½ 32ds of the capital stock of the Alkire Oil & Gas Company, and bills receivable aggregating over $4,000, and also a certain interest it held in an oil and gas lease on 117 acres of land in Ritchie county, known as the G. W. Wills lease; that pursuant to said resolution a sale to said Thomas of all said company's assets was fully consummated; that prior to the closing of the aforesaid deal, to-wit, on the 7th of November, 1912, a written agreement was made between Post and Munson of the one part and French Thomas, acting through his agent Wellington Thomas, of the other part, reciting the existence of the aforesaid judgment, also the liability of plaintiff as the maker of the note on which the judgment was recovered, and further reciting, as a part of the preamble, the desire of said Thomas to have it released, whereby, in consideration of $5,559.10 to be paid within one year, with interest, to Post and Munson by Thomas, for which he executed his note and secured it by depositing with them $6,000 of the capital stock of the Buckhannon Chemical Company, and in further consideration that Post and Munson should receive 10% of any amount that might thereafter be collected from plaintiff on her original note, said Post and Munson released said judgment, and agreed to institute a suit or suits against plaintiff for the collection of said note, and to allow the use of their names in any such suit or proceedings, and whatever sum might thereby be collected, less

10%, was to go to said Thomas, who obligated himself to pay all attorney fees and be responsible for all expenses of suit; that thereafter, early in February, 1913, U. G. Young, the agent of Post and Munson, went to Bradentown, Florida, where plaintiff then resided, and by representing to her that no part of the original note had been paid and that he was authorized to bring suit on it against her, in the State of Florida, if it was not paid, or if some satisfactory arrangement was not made, whereby payment would be secured, induced her to obtain from the Sun Lumber Company and the Mayton Lumber Company their joint note for $5,600, payable to her order, and made for her accommodation, which note she endorsed to said Post and Munson; that no stock was issued to plaintiff by said Parkersburg-Buckhannon Oil & Gas Company in consideration for her original note and that said stock is of no value; that an action against said company for the deceit and fraud in obtaining from plaintiff her note would be fruitless; and that the judgment in favor of Post and Munson was virtually satisfied out of the assets of said company, by the sale thereof to Thomas and by his agreement with said judgment creditors.

The foregoing facts are sufficient to give to a court of equity jurisdiction to administer preventive relief by cancelling the note. While the bill admits Post and Munson were innocent holders for value of the original note, still, if the averments above recited are true, their judgment was actually paid and discharged by their acceptance of Thomas' note secured by collateral, in lieu of the judgment, and therefore there was no consideration for the note, collection of which is sought to be enjoined. The bill, being taken as true against the Parkersburg-Buckhannon Oil & Gas Company, establishes its liability to plaintiff for the fraud, hence payment of the judgment by it would give it no cause of action against her, but would in reality be correcting its own wrong. The note was voidable while it remained in its hands, but by negotiating it in due course to an innocent purchaser it cut off plaintiff's right of defense, and by applying a part of its assets to the payment of the judgment recovered against the endorsers only, if that is a fact, the debt has been discharged by the

person ultimately liable, and justice is satisfied. But these averments are not borne out by the evidence, as we shall endeavor to point out when we come to consider the case on its merits. We are now considering only the sufficiency of the bill on demurrer.

While not the actual maker of the second note, plaintiff avers it was made at her instance and for her accommodation, and that she is primarily liable to the makers. The note was not due at the time this suit was brought, and if Post and Munson should endorse it in due course to an innocent purchaser, plaintiff could make no defense to it. Anticipating that contingency, she sought relief in equity. That equity has jurisdiction to cancel a negotiable instrument, fraudulently procured, before it is passed to an innocent purchaser, is well established. *Billups* v. *Music Co.,* 69 W. Va. 15; *Hiett* v. *Shull,* 36 W. Va. 563; 2 Story's Eq., Sec. 694; and Hogg's Eq. Prin., Sec. 48. But just the thing plaintiff feared might happen, when she filed her original bill, actually had occurred several days before. Post and Munson had endorsed the note for a valuable consideration to the Traders National Bank of Buckhannon. When this fact was made to appear by the filing of the answer of Post and Munson, plaintiff amended her bill making the bank a party, and charged that it was not an innocent purchaser of said note, but took it with knowledge of the agreement between Post and Munson and French Thomas, and alleged that said bank had brought an action at law on said note. Briefly, the averments show that plaintiff had a right of action against the Parkersburg-Buckhannon Oil & Gas Company for deceit in fraudulently inducing her to execute the original note; that the agreement between Post and Munson and French Thomas, amounted in reality to a payment of the judgment with the assets of said corporation; and that, because of her equities against said corporation should operate as a payment of the second note also. The averments of the amended bill are, therefore, sufficient to sustain the jurisdiction entertained on the original bill. Our conclusion is no error was committed in failing to dismiss the bill or amended bill upon the demurrers.

The averments of the bill can be taken as true only against

the Parkersburg-Buckhannon Oil & Gas Company which, by failing to answer, admits their truth. Post and Munson, Thomas and the Traders National Bank all answered, denying all material allegations relating to them respectively, and plaintiff has failed to prove them. She gave her own deposition and not a word does she say in respect to the charges of fraudulent representations alleged to have been made to her by the agent of Post and Munson, by which she says she was influenced to procure the Sun Lumber Company and the Mayton Lumber Company to execute the note which she endorsed to them. She is not examined with reference to that matter. Although Post and Munson admit that their agent U. G. Young procured from plaintiff, at their instance, the second note, yet they deny that it was fraudulently or improperly procured, and plaintiff expressly admits, in her testimony, that she had paid no part of the original note. All her testimony relates to the false and fraudulent representations which she says were made to her by V. S. Lynch, agent of the corporation, inducing her to buy its stock and execute her original note therefor. Post and Munson and the Bank not only deny all fraud and aver their innocence and good faith in all the transactions respecting the purchase of said original note, the release of the judgment subsequently recovered thereon and the procuring from plaintiff of the second note, but they prove by the uncontradicted testimony of said William Post and C. D. Munson, who are officers in said bank, that neither they nor the bank had any knowledge or information respecting plaintiff's alleged equities until the bringing of her suit, which was about two weeks after the note had been negotiated to the bank in due course.

In his brief counsel for plaintiff frankly admits she has failed to sustain her charges, so far as they relate to or affect the rights of said Post and Munson and the bank, and that, as to them, the bill was properly dismissed. But he earnestly insists that plaintiff is entitled to be subrogated to the rights of Post and Munson as against French Thomas in respect to his note executed to them in consideration for the release of their judgment. She did not pray for that particular relief, nor in fact for any kind of relief against said

Thomas, and it is doubtful whether such relief as she now claims could be granted under the prayer for general relief. Generally speaking equity will grant relief, under a general prayer, against those parties only as to whom special relief is asked. *Milling Co.* v. *Read,* 76 W. Va. 560. But granting, arguendo, that it might be given under the general prayer, plaintiff has not shown herself entitled to it, for the following reasons: (1) she had not paid the debt nor established her claim against the Parkersburg-Buckhannon Oil & Gas Company at the time she brought her suit. Although there is a stipulation in the record, signed by counsel, to the effect that plaintiff has deposited with the bank a sufficient sum to pay off the note, which is to be retained by the bank in the event plaintiff fails in her suit, and to be returned to her if she prevails, still it expressly provides that it shall not affect the rights of any of the parties to the suit, and their rights must be determined by the facts as they existed when the suit was brought. (2) Chiefly because Thomas' obligation to Post and Munson was not absolute but only conditional, and if the conditions have been complied with, the obligation is discharged and, therefore, Post and Munson would have no right against Thomas, to which plaintiff could be subrogated. The subrogated party can claim no greater rights than the party has to whose rights he is subrogated. *Teter, Admr.* v. *Teter,* 65 W. Va. 167. Thomas' undertaking to Post and Munson was not to pay them a certain sum of money, in any event, but his note was given in consideration for their release of the judgment, in order that he might purchase the assets of the company free of the incumbrance. The release operated to discharge the sureties or endorsers on the original note, and the contracting parties, then undertook to collect the note from the maker, no judgment having been recovered on it against her, she apparently being then a resident of the state of Florida. The names of Post and Munson were to be used in any necessary suit or proceeding against her, but Thomas was to bear all expenses of suit and costs of collection including attorney fees, and, if successful in making the collection, was to turn over 10% of the proceeds to said Post and Munson, which was to be retained by them as a further con-

sideration for releasing their judgment, and the balance was Thomas' to apply as he pleased. He could retain it or apply it on his note to Post and Munson. If collected and applied on his note, it was to be discharged pro tanto, and left him bound on his own note for the deficiency only, if any. No part of plaintiff's note was actually collected. But the note, which is the subject of this suit, was executed to her by the Sun Lumber Company and the Mayton Lumber Company for her accommodation and by her endorsed to Post and Munson in payment of it. It is proven that Thomas has paid Post and Munson a sum equal to 10% of the amount of the original note and interest. It still remains for him to pay the costs and attorney fees paid by Post and Munson in procuring the second note and in the efforts to collect it, which fees and expenses appear not yet to have been ascertained. When they shall have been determined and paid, Thomas will have fully performed his undertaking with Post and Munson. and they will have no demand against him to which plaintiff could be subrogated. The real purpose of the arrangement appears to have been to accomplish the release of the endorsers and compel payment of the note by plaintiff the maker. There is no proof of fraud, deceit or wrongdoings either on the part of Post and Munson or French Thomas. They deny any knowledge of plaintiff's equities against the note and there is no proof whatever that they had knowledge even of such facts as would put them upon inquiry. There is no charge in the bill, or proof in the record, that Thomas' purchase of the assets of the corporation was fraudulent. Thomas denies, in his answer, any knowledge of the fraud alleged against the Parkersburg-Buckhannon Oil & Gas Company in obtaining the first note from plaintiff, and avers he did not know she claimed any defense thereto at the time he purchased the company's assets.

The release of the judgment against the endorsers did not operate to extinguish Post and Munson's right of action against the maker. The contract expressly retained that right for the joint benefit of themselves and Thomas. There is no rule of law or principle of equity which would forbid them, in good faith, from releasing the endorsers and holding

the maker. That, in effect, is what they did, first requiring
Thomas to indemnify them against any possible loss that
might result from the release of their judgment. The appli-
cation to be made, under the agreement, of the proceeds of
plaintiff's note, when and if collected, clearly shows that
Thomas' note is discharged pro tanto, by Post and Munson's
receiving the entire proceeds of the second note, instead of
only 10% of it. According to the agreement Thomas was
entitled to all of it, except 10%. He may or may not have
made a profitable bargain, the record does not show, but, un-
less he acted in bad faith, equity will not punish him by deny-
ing him the fruits of his bargain, if it happens to be a good
one. *Billups* v. *Music Co.*, 69 W. Va. 15; and *Pennybacker*
v. *Laidley*, 33 W. Va. 624. Thomas' purchase was hazardous.
He took the risk of having to pay Post and Munson the
amount of their judgment, and if he had it to pay, the com-
pany's assets would cost him something over $8,000, but he
also had the chance of collecting plaintiff's note, and in the
event he succeeded, the assets would stand him perhaps less
than $4,000, the exact amount depending upon the ex-
penses and attorney fees he obligated himself to pay, not yet
ascertained. The law does not forbid the making of such
contracts, and a contract is not fraudulent simply because it
contains an element of hazard.

All the proof respecting the financial condition of the
Parkersburg-Buckhannon Oil & Gas Company is to the ef-
fect that it had never been able to declare a dividend, and had
no more than enough property to pay its debts. In fact the
bill alleges the company became so largely indebted it had to
sell its property to meet its obligations. It owed debts amount-
ing to $3,040, besides the Post and Munson judgment, and sold
its assets for $3,040 on condition that the purchaser would
indemnify it and the other endorsers on the note against said
judgment, but not, as counsel insists, against liability to plain-
tiff for deceit in the sale of stock to her. If the purchaser
succeeded, by means of an agreement with the holder of the
note, in collecting it from the maker, and applying the pro-
ceeds to the discharge of his contract of indemnity, and
profiting thereby to that extent, it is not a matter of which

plaintiff can complain, unless she can show that the arrangement was knowingly entered into by said Thomas for the fraudulent purpose of aiding the company in avoiding its liability to her on account of the alleged deceit and fraud in inducing her to execute the note; but this cause of action, if any, is neither alleged nor proved. It is not in the case in any way. We feel constrained to admit, however, that on account of the peculiar and unusual character of these transactions and circuitous means employed to procure payment of the note by plaintiff and, at the same time, a release of the endorsers from a judgment thereon against them, our suspicions were aroused concerning the *bona fide* of the transaction, but, as we have said, this is not involved, except as regards the second note, and the allegation as to it fails for lack of proof.

Having failed to show herself entitled to equitable relief, it was not error to dismiss plaintiff's bill, which the court did without prejudice to any right of action at law she may have against the Parkersburg-Buckhannon Oil & Gas Company, and the decree will be affirmed.    *Affirmed.*