In re David A. SHREVES and Linda L. Shreves, Debtors.

Martin P. Sheehan, Trustee, Plaintiff,

v.

Valley National Bank, Defendant.

Bankruptcy No. 00–12666.
Adversary No. 00–1189.

United States Bankruptcy Court,
N.D. West Virginia.

June 12, 2001.

Thomas Fluharty, Clarksburg, WV, for debtor.

Martin P. Sheehan, Wheeling, WV, for plaintiff.

Julia A. Chincheck, Charleston, WV, for defendant.

### MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

This matter comes before the Court pursuant to the trustee's Complaint to Set Aside Transfer of Interest. The trustee seeks to set aside the security interest of defendant Valley National Bank ("Valley")

in a 1997 GMC Jimmy ("vehicle") that was perfected within ninety days of the debtors' bankruptcy filing and more than four months after the interest was obtained. The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157.

## I. *FACTS*

The facts of this case center on three distinct transactions: first, the purchase of the vehicle by David A. Shreves and Linda L. Shreves ("debtors") financed by United National Bank ("United"); second, the subsequent refinancing agreement between the debtors and Valley; and third, the perfection of Valley's interest during the preference period.

Sometime prior to April 3, 2000, the debtors obtained a loan from United for the purpose of purchasing a 1997 GMC Jimmy, and granted United a security interest in the vehicle. However, on April 3, 2000, before United perfected its interest, the debtors refinanced this loan through Valley. Valley executed a check on April 5, 2000 and sent it to United.

United recorded its lien on the West Virginia motor vehicle title on April 21, 2001. Ten days later, on May 1, 2000, United released this lien. The West Virginia Department of Motor Vehicles ("DMV") did not record Valley's lien on the title until August 11, 2000. Consequently, from May 1, 2000, until August 11, 2000, no lien was recorded on the vehicle title.

■ The reason for the late recordation appears to be delay by both Valley and the debtors. Sometime in June 2000, Valley sent a "Request for Title" and an "Application to Record Lien" form for the debtors

to execute and return. Sometime in July 2000, Valley received the title and the executed application form from the debtors. On August 8, 2000, Valley submitted its application to record the lien to the DMV, and on August 11, 2000, the DMV issued a title recording Valley's lien.[1] On October 18, 2000, the debtors filed a petition under Chapter 7 of the Bankruptcy Code, and Martin P. Sheehan was appointed as trustee of the bankruptcy estate. Thereafter, on December 11, 2000, the trustee filed this adversary proceeding to set aside Valley's security interest.

Following a January 30, 2001 telephonic pretrial conference, the Court granted the trustee thirty days to submit a brief in support of his position, and the debtors thirty days to file a responsive brief. Upon receipt of these briefs, the Court took the matter under advisement.

## II. *DISCUSSION*

The trustee seeks to avoid Valley's lien perfection as preferential under 11 U.S.C. § 547(b). Valley raises three defenses: first, under 547(c)(1), the "substantially contemporaneous exchange" exception; second, the state law doctrine of equitable subrogation; and third, the earmarking doctrine.

### A. *Substantially Contemporaneous Exchange Defense*

■ Preferences are governed by 11 U.S.C. § 547. This section provides, *inter alia,* that:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

---

1. The application was submitted to the DMV on August 8, 2000. Under this Court's ruling in *In re Horner,* 248 B.R. 516 (Bankr. N.D.W.Va.2000), the date the lien application is received by the DMV is the effective date of perfection.

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The trustee bears the burden of proving the five elements set forth under § 547(b). *See* 11 U.S.C. § 547(g). Even if the trustee proves the elements of a preference, his avoidance power may be limited by enumerated exceptions as set forth in § 547(c).

■ The burden shifts to the creditor to prove nonavoidability under these exceptions. *See id.* Of the exceptions listed under § 547(c), Valley raises only § 547(c)(1), the "substantially contemporaneous exchange rule" as a defense. Section 547(c)(1) provides that:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

Under the Code, Valley must first prove that the transfer was intended by the parties to be a contemporaneous exchange for new value given to the debtor, and further that the transfer was *in fact* a substantially contemporaneous exchange. The grant of the security interest at the time of the refinancing is sufficient evidence of the intent of Valley and the debtors to make a contemporaneous exchange for new value. More problematic for Valley, however, is the demonstration that the transfer was actually substantially contemporaneous, since the perfection of the security interest occurred more than four months after the security agreement.

This Court has had a number of occasions to consider preference cases where a creditor has not timely perfected its security interest. Most often, these cases arise where there has been an "enabling loan" creating a purchase money security interest that was ultimately perfected more than ten or twenty days after the debtors acquired the collateral, but within ninety days of bankruptcy. These cases arose following the Fourth Circuit Court of Appeals decision in *Wachovia Bank and Trust Co. v. Bringle (In re Holder)*, 892 F.2d 29 (4th Cir.1989), and the United States Supreme Court case of *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998).

In *Holder*, the debtor purchased a truck on July 27, 1987, signing a security agreement with Wachovia Bank & Trust Co. ("Wachovia") in exchange for a loan. 892 F.2d at 29. Wachovia delivered the necessary paperwork to the North Carolina Division of Motor Vehicles nineteen days later, on August 12, 1987, and the lien was recorded on the same day. *Id.* Eighty-two days after the debtor received possession of the truck, the debtor filed for relief

under Chapter 13 of the Bankruptcy Code. *Id.* The trustee filed a motion to avoid Wachovia's lien as preferential, and Wachovia asserted § 547(c)(1), the "contemporaneous exchange" defense. *See id.* at 29–30.

The sole question before the Fourth Circuit was whether § 547(c)(1) is applicable to protect purchase money security interests perfected more than ten days after the debtor receives possession of the vehicle. *Id.* at 29. At the time of the transfer in question, § 547(c)(3) provided that to qualify for the enabling loan exception, the security interest must be perfected on or before ten [2] days after the debtor's receipt of possession. The court concluded that the contemporaneous exchange exception did not apply to purchase money security transactions perfected more than ten days after the debtor received possession of the collateral.

Subsequent to *Holder*, the United States Supreme Court considered, in *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998), the § 547(c)(3) "enabling loan" exception to the trustee's preference avoidance power as it related to state law relation-back periods. Under § 547(c)(3) as it existed after 1994, an enabling loan made by a creditor who obtains a security interest is excepted from the preference period so long as the interest is perfected within twenty days of the debtor's receipt of possession of the collateral. In a non-bankruptcy context, state law often allows for a longer relation-back or grace period. In West Virginia, the relation back period is sixty days. W. Va.Code § 17A–4–A–4 (2000). In *Fink*, the applicable Missouri statute in question provided for a thirty-day period. *Fink*, 522 U.S. at 213, 118 S.Ct. 651.

The issue in *Fink* was whether a creditor who performs the acts necessary to perfect its interest outside the § 547(c)(3) twenty-day period, but within the otherwise applicable state law relation-back period can invoke the "enabling loan" exception provided by § 547(c)(3). The Court held that a transfer of a security interest is "perfected" under § 547(c)(3) on the date the necessary state law perfection steps are taken, but that a creditor may invoke the enabling loan exception only by satisfying the state law perfection requirements within the twenty-day period provided by the Bankruptcy Code.

Following the Supreme Court and Fourth Circuit opinions, this Court decided *In re Horner*, 248 B.R. 516 (Bankr. N.D.W.Va.2000). In *Horner*, this Court recognized that although federal law mandates that a creditor must perfect its security interest within twenty days of the debtor receiving possession of the subject property, it is state law that determines whether the interest has actually been perfected. *Horner*, 248 B.R. at 518, citing *Fink*, 522 U.S. at 212, 118 S.Ct. 651. *Horner* involved a purchase money security interest in a motor vehicle where the creditor made application for a lien within the twenty-day period, but the lien was not actually recorded on the title until after the expiration of the twenty-day period. *Id.* at 517. This Court held that a security interest in a motor vehicle is perfected on the date that the DMV receives the application from the creditor, concluding that under the facts in *Horner*, the creditor had satisfied the twenty-day requirement and could invoke the enabling loan exception to the trustee's avoidance power. *Id.* at 518.

---

**2.** In 1994, § 547(c)(3) was amended to the current twenty-day grace period; prior to 1994, the grace period was ten days.

In the instant case, Valley did not make an enabling loan to the debtors, but rather refinanced the debtors' previous loan from United. Since the enabling loan exception is applicable only to purchase money security transactions, this defense is not available to Valley. However, the law pertaining to the enabling loan exception is crucial to the analysis of Valley's contemporaneous exchange defense.

Valley requests that this Court adopt a more lenient standard under the contemporaneous exchange defense for the perfection of non-purchase money liens than the one clearly established for purchase money security loans under the enabling loan defense. Valley advocates the adoption of a flexible definition of "substantially contemporaneous" for purposes of preference action defenses. Although some courts have adopted such a standard, others, including the United States Court of Appeals for the Sixth Circuit, have declined to do so.

The Sixth Circuit considered the adoption of a flexible approach to § 547(c)(1) in *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir.1984). The court declined to adopt a flexible standard, and determined that the perfection of a security interest in the debtors' car that occurred thirty-three days after the security agreement was not substantially contemporaneous with the loan transaction for purposes of excepting it from the trustee's avoidance power. *Arnett*, 731 F.2d at 364. In *Arnett*, the debtors obtained a consolidation loan from Security Mutual Finance Corp. ("SMFC") and granted SMFC a lien on December 10, 1980. *Id.* at 359. SMFC immediately mailed a check to American National Bank ("ANB") to pay off ANB's prior security interest. *Id.* Because of delayed holiday mail and employee absences, ANB did not release its lien or send the certificate of title to

SMFC until January 9, 1981. *Id.* Consequently, SMFC did not perfect its lien until January 12, 1981, thirty-three days after the granting of the security interest to SMFC. *Id.* The debtors filed a petition under Chapter 7 within ninety days of SMFC's lien perfection, and the trustee attempted to set aside the lien as a voidable preference. *Id.*

The bankruptcy court and the district court both held that the lien was not a preference. *Id.* The Sixth Circuit reversed, however, stating:

> Although there can be no doubt that the parties' clear intent to effectuate a contemporaneous exchange was frustrated, the statute nonetheless requires that the exchange *in fact* be contemporaneous. Section 547(c)(1)(B). The lower courts' interpretation places too little emphasis on the necessity of temporal proximity between the loan and the transfer of the security interest.

*Id.* at 364.

Although the Fourth Circuit has not addressed the use of a flexible standard under § 547(c)(1), it did address the issue under § 547(c)(3). In *Holder*, discussed *supra*, the Fourth Circuit could have applied a flexible test under § 547(c)(3), but elected not to do so. If this Court now adopts a more flexible standard in the instant case, it would result in non-purchase money security interests having more flexibility than purchase-money security interests.

Section 547, if anything, encourages a *less* flexible approach to non-purchase money liens. Under § 547(e)(1)(2):

> for purposes of the trustee's avoidance power, a transfer is made—(A) at the time such transfer takes effect between the transferor and transferee, if such transfer is perfected at, or within 10 days after such time *except as provided in subsection (c)(3)(b) [the enabling*

*loan exception]* [or] at the time such transfer is perfected, if such transfer is perfected after such 10 days.

(emphasis added) This section provides that unless a transfer is perfected within ten days after the transfer takes place, it cannot relate back to the initial transaction date. However, the section specifically excludes purchase money transactions under the enabling loan exception. These transactions are allowed a twenty-day relation-back period. 11 U.S.C. § 547(c)(3)(B). For this Court to allow a more flexible standard for non-purchase money security interests than for purchase money security interests would be inconsistent with the Code.

Further, inasmuch as the Fourth Circuit has declined to adopt a flexible approach, this Court feels compelled to follow precedent. Accordingly, and in agreement with the Sixth Circuit's decision in *Arnett,* this Court holds that Valley's perfection of a non-purchase money security interest was not in fact substantially contemporaneous with the loan transaction occurring four months previously.

Valley and the debtors entered into the security agreement on April 3, 2000. Valley sent a check dated April 5, 2000, to United, thus fulfilling its part of the agreement.[3] United's lien was released on May 1, 2000. The DMV received Valley's application almost three months later, between August 8 and August 11, 2000. By its own admission, Valley did not even request the certificate of title from the debtors until sometime in June 2000. Valley's perfection of its security interest was not "in fact substantially contemporaneous" with the transfer as required by § 547(c)(1)(B). Therefore, Valley may not invoke the

§ 547(c) defense to the trustee's avoidance power.

B. *The Doctrine of Equitable Subrogation*

■■■ As an alternative to the "substantially contemporaneous exchange" defense, Valley asserts that its lien should not be avoided because under the doctrine of equitable subrogation, Valley is substituted to the place of United to enable it to enforce the security interest. The right of subrogation is defined by West Virginia law as the doctrine "that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all remedies which the creditor possessed against that other." *See, e.g., Bassett v. Streight,* 78 W.Va. 262, 88 S.E. 848 (1916), cited by *Ray v. Donohew,* 177 W.Va. 441, 352 S.E.2d 729, Syl. pt. 4 (W.Va.1986). Subrogation is "purely of equitable origin; it has as its object 'real essential justice.'" *Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213, 219 (1941) quoting *Hawker v. Moore,* 40 W.Va. 49, 20 S.E. 848, 849 (1894). Valley correctly asserts that the doctrine of equitable subrogation has long been recognized in West Virginia. The right of subrogation in West Virginia, however is neither automatic nor unlimited.

■■■ The West Virginia Supreme Court has stated that subrogation "will not be applied in every instance where a party secondarily liable has paid or otherwise discharged the debt of a party principally liable thereon," and that "[t]he right of subrogation depends on the facts and circumstances of each particular case." *Ray v. Donohew,* 177 W.Va. 441, 352 S.E.2d 729, 736 (1986). The court has declined to allow subrogation in cases where the right

---

**3.** The security agreement does not explicitly name United, nor any third party. The facts, however, support the existence of an agreement that Valley refinance the debtors' loan with United.

to subrogation has been modified or extinguished by contractual language, or by actions of a surety inconsistent with the right of subrogation. *See, e.g., Provident Life and Acc. Ins. Co. v. Bennett,* 199 W.Va. 236, 483 S.E.2d 819, 822 (1997); *Ray v. Donohew,* 177 W.Va. 441, 352 S.E.2d 729 (1986); *see also Thomas v. Capitol Fuels, Inc.,* 946 F.2d 886, 886 (4th Cir.1991) (citing *Ray v. Donohew*). Further, the court has limited subrogation based on the facts of individual cases, stating that "[s]ubrogation, being a creation of equity, will not be allowed except where subrogee has a clear case of right and no injustice will be done to another." *State ex rel. State Auto Mut. Ins. Co. v. Steptoe,* 190 W.Va. 262, 438 S.E.2d 54 (1993), citing *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993) and *Buskirk v. State–Planters' Bank & Trust Co.,* 113 W.Va. 764, 169 S.E. 738 (1933). Finally, the Court has consistently held that "[s]ubrogation entitles a person to no greater rights than the party had to whose rights he claims subrogation." *Butts v. Sun Lumber Co.,* 82 W.Va. 113, 95 S.E. 585 (1918).

 In the instant case, Valley requests this Court to apply the doctrine of subrogation, presumably pursuant to the Bankruptcy Court's equity power under 11 U.S.C. § 105 whereby the Court is authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." However, the powers enumerated in section 105(a) "are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Rouse v. Chase Manhattan Bank,* 226 B.R. 39 (W.D.Mo.1998) (holding that creditor who did not timely perfect lien in mobile home after refinancing loan not entitled to subrogation even though delay resulted from prior PMSI holder's delay in releas-

ing lien), quoting *Viking Associates v. Drewes (In re Olson),* 120 F.3d 98, 102 (8th Cir.1997); *Bird v. Carl's Grocery Co, Inc. (In re NWFX, Inc.),* 864 F.2d 593, 595 (8th Cir.1989); *Mixon v. Anderson Cajun's Wharf (In re Ozark Restaurant Equipment Co., Inc.),* 816 F.2d 1222, 1230 (8th Cir.1987).

There are specific Bankruptcy Code provisions governing the priority of perfected and unperfected creditors. As of the commencement of the case, the bankruptcy trustee has the rights and powers of a hypothetical judicial lien creditor. 11 U.S.C. § 544(a). The trustee is deemed to have a lien on all lienable property of the debtor, and the hypothetical lien is inferior to any existing perfected lien at the time of the bankruptcy filing and superior to any unperfected lien. The trustee is granted the right under the Code to avoid transfers within the preference period, and the perfection of a lien within the preference period is a transfer avoidable by the trustee. To apply the doctrine of equitable subrogation under the facts of the instant case would directly circumvent the result intended by the Code. *Accord Rouse,* 226 B.R. at 45.

 Further, even if the Court found the right of equitable subrogation to be consistent with the Bankruptcy Code, it would not find subrogation under the facts of the instant case. "[S]ubrogation will never be permitted where it causes injustice or works to the prejudice of third parties." *See, e.g., Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213, 219 (1941). To allow Valley to sidestep a preference avoidance when it perfected its lien four months after executing the security agreement would work to the prejudice of all unsecured creditors.

 Finally, even if this Court allowed Valley to step into the shoes of United, Valley would be in no better position than

it is now. Although United did have a validly recorded lien on the vehicle, this lien was released on May 1, 2000. As of May 1, neither United nor Valley had a perfected lien. Equitable subrogation does not relieve a creditor of the statutory duty to record a motor vehicle lien on the certificate of title. See W. Va.Code § 17A–4A–1 (2000) (all motor vehicle liens must be shown on face of certificate of title).

Valley waited more than thirty days from the release of United's lien to contact the debtors to obtain the title and lien application authorization. Once receiving the executed title and application, Valley waited more than thirty more days before filing the application with the DMV. Allowing Valley to resurrect and assume the validly released lien of another creditor when, but for its own delay, Valley's own lien would have been perfected within the relation-back period, or at least outside of the preference period, would not fulfill the equitable subrogation objective of "real essential justice."

For these reasons, the Court finds Valley's argument of equitable subrogation to be without merit.

## C. *The Earmarking Doctrine*

The final defense raised by Valley is that of the earmarking doctrine. Under this doctrine, Valley asserts that it lent money to the debtors upon refinancing specifically for the purpose of paying off United and that consequently, Valley steps into United's secured position. The earmarking doctrine is accepted in bankruptcy courts as a preference defense, as explained by the Fifth Circuit case of *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351 (5th Cir.1986):

> For a preference to be voided under section 547, "it is essential that the debtor have an interest in the property

transferred so that the estate is thereby diminished." [Citations omitted]. If all that occurs in a "transfer" is the substitution of one creditor for another, no preference is created because the debtor has not transferred property of the estate; he still owes the same sum to a creditor, only the identity of the creditor has changed. This type of transaction is referred to as "earmarking," and is, according to a noted bankruptcy treatise, applicable in the following circumstances:

> "In cases where a third person makes a loan to a debtor specifically to enable him to satisfy the claim of a designated creditor, the proceeds never become part of the debtor's assets, and therefore no preference is created. The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as such proceeds are clearly 'earmarked.' " 4 *Collier on Bankruptcy* ¶ 547.25 at 547– (101–102) (15th ed.1986).

> The earmarking doctrine is widely accepted in the bankruptcy courts as a valid defense against a preference claim, primarily because the assets from the third party were never in control of the debtor and therefore payment of these assets to a creditor in no way diminishes the debtor's estate.

Quoted by *Hovis v. Powers Construction Co.,* (*In re Hoffman Associates*), 194 B.R. 943 (Bankr.S.C.1995).

Earmarking is a judicially created doctrine, and is "an interpretation of the requirement that a preferential transfer must involve a transfer of property of the debtor." *Krigel v. Sterling National Bank* (*In re Ward*), 230 B.R. at 118, citing *McCuskey v. Nat'l Bank of Waterloo* (*In*

*re Bohlen Enters., Ltd.*), 859 F.2d 561, 565 (8th Cir.1988). It is clearly established that three elements must be shown in order for the earmarking doctrine to apply when a new lender is involved:

> (1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,
>
> (2) performance of that agreement according to its terms, and
>
> (3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate.

*See, e.g., McCuskey v. Nat'l Bank of Waterloo (In re Bohlen Enters., Ltd.),* 859 F.2d 561, 566 (8th Cir.1988).

■ The Fourth Circuit has not addressed the issue of earmarking as it relates to the perfection of a refinancing loan during the preference period. Valley relies on the Eighth Circuit Bankruptcy Appellate Panel case of *Krigel v. Sterling National Bank (In re Ward)*, which allowed an earmarking defense to a preference action where the debtor refinanced a vehicle loan during the preference period. *See* 230 B.R. 115. In *Ward,* the debtor refinanced its vehicle loan on April 23, 1997, and the original lien was released five days later on April 28, 1997, but the refinancing lien was not perfected until June 6, 1997, forty-four days later. *Id.* at 116–117. On July 23, 1997, eighty-three days after the refinancing agreement, the debtors filed a petition under Chapter 7 of the Bankruptcy Code. *Id.* at 117. The court allowed an earmarking defense on the grounds that there was an agreement between the new lender to pay a preexisting debt of the debtor, that this agreement had been performed according to its terms, and the transfer did not diminish the amount of the debtors' estate available

for distribution to creditors. *See id.* at 119–120.

In the factually similar case of *Vieira v. Anna National Bank (In re Messamore),* 250 B.R. 913 (Bankr.S.D.Ill.2000), the United States Bankruptcy Court for the Southern District of Illinois specifically declined to follow the *Ward* reasoning. The court in *Messamore* acknowledged that the earmarking doctrine "is clearly applicable in a refinancing situation to determine whether the debtor's payment of an existing creditor with funds borrowed from a new creditor constitutes a preferential transfer—that is, whether such payment is a transfer of the debtor's 'interest in property' to pay the debt owed to the first creditor." *Id.* at 916. The court distinguished the issue before it, however, because the "transfer" at issue was not the transfer of funds to the initial creditor, but the transfer that occurred when the new creditor perfected its lien more than ten days after the parties' loan agreement. *Id.* The court explained that "[a]lthough the debtors' transfer to [the new lender] arose in the context of a refinancing arrangement, it did not involve the payment of funds by a third party or, indeed, the payment of borrowed funds at all. For this reason, the earmarking doctrine has no logical relevance to such transfer." *Id.*

The court criticized *Ward* for failing to distinguish between the transfer of the borrowed funds to the original creditor and the belated perfection of the security interest, and for wrongly invoking the earmarking doctrine in a context in which the concept does not fit. *Id.* at 918. Further, the court added, the third element necessary for earmarking that there be no diminution of the debtor's estate was not met. *Id.* at 919. The court explained that the debtor's transfer of a property interest— namely the grant of a security interest—to a new creditor clearly diminished the prop-

erty of the estate by diminishing the assets available for other creditors. *Id.* The court, stating that the *Ward* court found there was no diminution of the debtor's estate because one creditor was merely substituted for another, found that in fact "the new creditor was required to perfect before its security interest became effective between the parties," and that "until that time, the new creditor was unsecured, and its delayed perfection resulted in a transfer made 'for or on account of an antecedent debt,'" and this transfer diminishes the assets available for other creditors. *Id.* at 919.

This Court finds the *Messamore* Court's reasoning persuasive, and declines to follow *Ward.* The earmarking doctrine is inapplicable under the facts of the instant case.

### III. *CONCLUSION*

Valley's failure to timely perfect its interest within ten days as required by § 547(e)(2)(B) precludes the relation back of the transfer to the initial loan date. Since the lien perfection is a transfer occurring during the preference period, and because Valley has no valid defenses, the Court hereby sets aside the transfer of the security interest in the 1997 GMC Jimmy and declares said lien **VOID**.

It is accordingly **SO ORDERED**.