**In re Peter N. MOERI and Lynda L. Moeri, Debtors.**

**John M. Scaffidi, Trustee, Plaintiff,**

**v.**

**Kenosha City Credit Union and State of Wisconsin (Department of Transportation), Defendants.**

**Bankruptcy No. 02–30718–JES. Adversary No. 02–2366.**

United States Bankruptcy Court, E.D. Wisconsin.

Aug. 8, 2003.

Michael F. Dubis, Esq., Waterford, WI, for Plaintiff–Trustee.

Roger T. Lambert, Esq., Brookfield, WI, for Defendant–Kenosha City Credit Union.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

At issue is whether the lien of Kenosha City Credit Union ("defendant") in debtor's 1999 Jeep is avoidable as a preferential transfer.

1. Wis. Stats. § 342.19 Perfection of security interests.

(1) Unless excepted by s. 342.02, a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or secured parties of the vehicle unless perfected as provided in this chapter.

(2) Except as provided in sub. (2m), a security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the secured party, and the required fee. It is perfected as of the later of the time of its delivery or the time of the attachment of the security interest.

The trustee argues that, under Wis. Stats. § 342.19 [1], a lien is perfected upon delivery of the prerequisite documents and fee to the Wisconsin Department of Transportation ("Department"). In this case, approximately 48 days passed from the time that the debtor signed the loan documents with the defendant to the time when the defendant's lien was perfected. Such perfection was within the 90–day preference period while the debtor was insolvent. The trustee submits that the perfection was tardy within the meaning of § 547(c)(3)(B) [2] of the Bankruptcy Code as having occurred beyond the permissible 20–day grace period afforded under § 547(c)(3)(B) after the debtor received possession of the Jeep and, consequently, the lien is subject to avoidance as a preferential transfer.

In response, the defendant relies upon the "earmarking" doctrine as a defense. The defendant further argues it should not be held responsible for any delay in perfection because it did not create the delay, alleging that such delay was caused solely by the Department. In support of this assertion, the defendant cites *Swanson, Trustee v. General Motors Acceptance Corp. (In re Kahl)*, Case No. 01–32245,

– – –

(3) An unperfected security interest is subordinate to the rights of persons described in ss. 409.317 and 409.323.

2. 11 U.S.C. § 547(c)(3)(B) states:

§ 547. **Preferences.**

– – –

(c) The trustee may not avoid under this section a transfer—

– – –

(3) that creates a security interest in property acquired by the debtor—

– – –

(B) that is perfected on or before 20 days after the debtor receives possession of such property . . . .

Adversary No. 02–2207 (on appeal to the district court).

The issue has been presented to the court upon a motion for summary judgment brought by the trustee together with a stipulation of facts and briefs by the parties.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F) and (O).

### STATEMENT OF FACTS

In August of 1999, the debtor, Peter N. Moeri ("debtor"), entered into a car lease with DaimlerChrysler Services North America, LLC ("Chrysler") involving a 1999 Jeep. This lease contained an option to purchase. On or shortly before May 28, 2002, the debtor exercised his option to purchase the Jeep. Chrysler provided the financing for the Jeep. On May 28, 2002, the application for title, prepared by Car-Max Auto Superstores, was electronically sent to the Department. The title application provided for Chrysler's purchase money security interest.

On June 17, 2002, the debtor applied for a refinancing loan with the defendant. After approving the debtor's loan, the defendant then contacted Chrysler to obtain an oral payoff of the loan. On June 24, 2002, the debtor signed the necessary loan documents. On June 25, 2002, the defendant then mailed to Chrysler the payoff loan balance of $13,973.22 and requested Chrysler to send to it the "paid lein[sic] perfection."

A gap in time then followed.

At some time between mid-July and early August of 2002, the defendant received a lien release from Chrysler; however, it did not also receive from Chrysler the certificate of title for the Jeep. The debtor had not been provided with the certificate of title when he purchased the Jeep from Chrysler. The defendant needed the cer-

tificate of title in order to apply for a replacement certificate of title to show the defendant as lienholder. The defendant then contacted the Department, shortly after it obtained Chrysler's lien release, inquiring into the status of the certificate of title to the Jeep. The Department informed the defendant that, although a title to the Jeep had been issued in the debtor's name, it was being held by the Department as undeliverable due to an incorrect address listed for the debtor. The defendant provided the Department with the debtor's correct address. On August 9, 2002, the defendant received from the debtor the original certificate of title to the Jeep listing the debtor as the owner and Chrysler as the lienholder. The defendant immediately delivered to the Department the original certificate of title, the lien release from Chrysler, the application for a new certificate of title containing defendant's name and address as lienholder, and the required fee. All of these documents and the fee were received by the Department on August 12, 2002.

On August 22, 2002, the debtor filed a petition in bankruptcy under chapter 7.

### DID THE TRANSFER OCCUR WITHIN THE 90–DAY PREFERENCE PERIOD, BUT AFTER THE GRACE PERIOD FOR SUCH PERFECTION?

The trustee states that he is entitled to avoid the defendant's security interest because the requirements to meet the exception to avoidance under § 547(c)(3) were not met. Under this exception, a purchase money security interest that secures new value and is perfected within 20 days after the debtor takes possession is not a preference, even if it occurs within 90 days before a bankruptcy petition is filed. However, § 547(c)(3) does not apply in this case. It only pertains to a purchase mon-

ey security interest. The defendant does not hold a purchase money security interest in the Jeep because it refinanced Chrysler's purchase money loan.

Sec. 547(e)(2),[3] not § 547(c)(3), applies to a refinanced loan. Under § 547(e)(2)(A), the transfer occurred when the defendant obtained its security interest from the debtor (i.e., when the defendant made the loan to the debtor). If the defendant had perfected its security interest within 10 days thereafter, its security interest would have been immune from a preference challenge. However, the defendant did not perfect its security interest until approximately 48 days after it made the loan to the debtor. Therefore, under § 547(e)(2)(B), the transfer from the debtor to the defendant occurred when the defendant perfected its security interest within the 90–day preference period.

### EARMARKING DOCTRINE

The defendant claims that, notwithstanding the tardiness in perfection, under the earmarking doctrine, there was no avoidable preferential transfer because its lien was simply a substitution for that of Chrysler which had been on the title. Under the earmarking doctrine, there is no avoidable preferential transfer of debtor's property interest when the new lender and the debtor agree to use loan funds to pay a specified antecedent debt and where the agreement's terms are actually performed and the transaction, viewed as a whole, does not diminish the debtor's estate.

There is authority to support the defendant's claim of earmarking as a defense. *In re Heitkamp*, 137 F.3d 1087 (8th Cir. 1998) applied earmarking as a defense to a mortgagee who forgot to record its mortgage until a few days before the debtors filed their bankruptcy petition. The court in *Heitkamp* declared that the mortgage was merely replacing a previously recorded subcontractors' security interest and, under the earmarking doctrine, the transfer was not avoidable under § 547(b). 137 F.3d at 1089; *accord In re Ward*, 230 B.R. 115 (8th Cir. BAP 1999). *Heitkamp* has been sharply criticized. In *In re Messamore*, 250 B.R. 913 (Bankr.S.D.Ill.2000), Judge Meyers provided a concise analysis of earmarking and its relationship to § 547(b) of the Bankruptcy Code. Judge Meyers pointed out that, while the earmarking doctrine may apply to payments of funds from a subsequent creditor to the original creditor, it has no application with respect to the subsequent creditor's obligation to timely record its lien, which is a separate and distinct transfer. Judge Meyers stated, 250 B.R. at 917–18 (in discussing *Heitkamp*) the following:

> However, the court's analysis failed to distinguish between the transfer of borrowed funds to the original creditor and the subsequent transfer that occurred when the new creditor belatedly perfected its security interest in the debtor's property. The earmarking doctrine,

---

**3.** Section 547(e)(2) provides that a transfer is made—

    (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);

    (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

    (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of-

    (i) the commencement of the case; or

    (ii) 10 days after such transfer takes effect between the transferor and the transferee.

while appropriate to prevent avoidance of the transfer of borrowed funds to the original creditor, was wrongly invoked as a defense for the new creditor's tardy perfection.

The defendant attempts to distinguish the instant case from *Messamore* by pointing out that, in *Messamore,* unlike the case at bar, the debtors obtained a lien release from the prior secured creditor which the defendant argues gave the debtors "actual dominion and control over the collateral." The defendant then reasons that by the debtors having obtained the lien release from the prior secured creditor, they then had the ability to dispose of the collateral (a mobile home) because they held "a free and clear, open or otherwise unencumbered title to the mobile home." The defendant points out that in the instant case, by contrast, there was never any "open title" by which the debtor could sell, encumber or otherwise control any equity superior to either the defendant or Chrysler. That argument is unavailing. Chrysler's lien was extinguished when the defendant paid Chrysler in full. The fact that the lien release was given by Chrysler to the defendant and not to the debtors and had not been removed from the records of the Department is of no significance.

*In re Prindle,* 270 B.R. 743, 747 (Bankr. W.D.Mo.2001) asserts that the earmarking doctrine necessarily assumes that the creditor held a continuing security interest. In the case at bar, the defendant did not have such a continuing security inter-

est despite the defendant's argument to the contrary. The defendant first became a duly perfected lienholder upon delivery on August 12, 2002 to the Department of the certificate of title to the 1999 Jeep with the debtor's name as owner along with the defendant's application for designation as a lienholder and with the required fee. The defendant's failure to timely perfect made its security interest vulnerable to attack by the bankruptcy trustee as a preferential transfer.

Had Chrysler made an assignment of its lien to the defendant in accordance with Wis. Stats. § 342.21 [4], it would have held a continuing interest in Chrysler's lien with the ability to "piggy back" on Chrysler's lien. But that did not happen here. The court rejects the defendant's assertion that it "had 'in effect' otherwise assigned it's[sic] lien" to the defendant. There was no assignment here—absolutely or otherwise within the meaning of Wis. Stats. § 342.21.

The court is unaware of any authority to support the defendant's attempt, absent an assignment, to rely upon Chrysler's lien on the certificate of title after Chrysler had been fully paid; to permit that result would render § 547(e)(2) meaningless. In *In re Shreves,* 272 B.R. 614 (Bankr. N.D.W.Va.2001), the court held that, where a lender failed to timely perfect its security interest in a motor vehicle, it could not utilize the doctrine of equitable

4. Wis. Stats. § 342.21 Assignment of security interest.

(1) Except as otherwise provided in s. 409.308(5), a secured party may assign, absolutely or otherwise, the party's security interest in the vehicle to a person other than the owner without affecting the interest of the owner or the validity of the security interest, but any person without notice of the assignment is protected in dealing with the secured party as the holder of the security interest and

the secured party remains liable for any obligations as a secured party until the assignee is named as secured party on the certificate.

(2) Subject to s. 409.308(5), the assignee may but need not, to perfect the assignment, have the certificate of title endorsed or issued with the assignee named as secured party, upon delivering to the department the certificate and an assignment by the secured party named in the certificate in the form the department prescribes.

subrogation and thereby "step into the shoes" of the prior lender. The court reasoned that to do so would be inconsistent with the Bankruptcy Code and prejudicial to the interests of the unsecured creditors. *Id.* at 622. *Shreves* further, in discussing the earmarking doctrine, criticized the failure in *Ward* to recognize the distinction between a transfer of borrowed funds and a separate transfer involving a belated perfection by a subsequent lender of its security interest. *Id.* at 624. *Shreves,* endorsing *Messamore,* declared that earmarking does not apply with respect to a tardy filing by a new creditor of its security interest during the preference period. *Id.* at 624–25.

██ A necessary requisite of earmarking is that there can be no diminution of the estate. In *Matter of Smith,* 966 F.2d 1527 (7th Cir.1992), the court stated that under the earmarking doctrine, there is no preferential transfer where "the debtor's property (i.e., the fund out of which creditors can be paid) is not diminished." *Id.* at 1533. In the instant case, however, the bankruptcy estate is diminished if the trustee fails in his attempt to avoid the defendant's lien as a preferential transfer and is unable to recover the Jeep for the bankruptcy estate.

The defendant asserts that "the debtor simply has no interest in the existing lien of a prior creditor which is transferred to the substitute creditor." While that is true, the lien is not the property interest which the trustee asserts is property of the estate. Rather, it is the Jeep itself which is the property interest.

### WHOSE FAULT IS IT?

██ The defendant places full blame for the delay in perfection upon the Department, alleging there was an "unexplained delay" in the Department's issuance of the original certificate of title and adding that,

until such time as the Department first issued its original title to the debtor, the defendant did not have the ability to take steps to perfect its lien. The defendant then concludes that, under those circumstances, "no preference is present" because "(the Department) was exceptionally dilatory and caused the current problem" and that "the delay, errors, omissions, or untimelyness[sic] of (the Department) in not promptly issuing the original title after receipt of debtor's title application on May 28, 2002 cannot and should not be held to the detriment of a secured party which had promptly acted."

The court rejects the defendant's attempt to place all blame upon the Department. There is plenty of blame to be spread around here. The placing of an incorrect address on the original certificate of title by CarMax Auto Superstores surely contributed to this delay. Chrysler's failure to promptly return the lien release to the defendant also added to the delay. Last, and certainly not least, the defendant itself was remiss in failing to monitor this transaction until mid-July or early August of 2002 when, for the first time, it inquired of the Department as to the status of the certificate of title. Recently, in *In re Morgan,* 291 B.R. 795, 803 (Bankr.E.D.Tenn. 2003), a party who had refinanced a car loan argued that it should not be penalized due to the failure of the purchase money lender to deliver to it the certificate of title after the refinancing occurred. The court disagreed declaring that, even though the purchase money lender may have had a duty to deliver the certificate of title to the refinancing lender, it was the refinancing lender's responsibility to obtain the title or obtain a duplicate of the title, and the risk of loss should be borne by the refinancing lender. The defendant in the instant case, being in the business of lending funds, knew or should have recognized the impor-

tance of promptly perfecting its interest and the consequences of such failure to fully comply with the perfection requirements under Wis. Stats. 342.19.

The facts involved in *Kahl, supra,* upon which the defendant relies, are readily distinguishable from the facts in the instant case. In *Kahl,* the error involved a failure by Baird, Inc., a third party agent acting under contract with the Department, to enter the name of lienholder, GMAC, on the certificate of title. That was a major error. In the case at bar, CarMax Auto Super Stores, acting on behalf of Chrysler, failed to list the correct address of the debtor. The defendant itself, in its brief, acknowledged that this mistake was "of no legal significance," and the court agrees.

### CONCLUSION

The defendant's lien constitutes an avoidable preferential transfer and is preserved for the benefit of the bankruptcy estate. Summary judgment is **GRANTED** in favor of the plaintiff. A separate order shall issue.

This decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.